420 A.2d 527

**COMMONWEALTH of Pennsylvania**

v.

**Stanley Dwayne PRICE, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 16, 1979.

Filed May 16, 1980.

John R. Hoye, Jr., Connellsville, for appellant.

Gerald R. Solomon, District Attorney, Uniontown, for Commonwealth, appellee.

Before SPAETH, HOFFMAN and VAN der VOORT, JJ.

SPAETH, Judge:

This is an appeal from judgments of sentence for crimes arising from two unrelated episodes. In No. 436 appellant was charged with burglary, theft by receiving stolen property, and criminal conspiracy. These charges arose from the burglary of Grant's Cycle Shop on May 25, 1978. A jury convicted appellant of all charges, and after post–verdict motions were denied, he was sentenced to two and one–half to five years in prison. In No. 457 appellant was charged with burglary, theft by unlawful taking, and theft by receiving stolen property. These charges arose from the burglary of a private residence on June 17, 1978. A jury acquitted appellant of theft by receiving stolen property but convicted him of burglary and theft by unlawful taking. After post–verdict motions were denied, appellant was sentenced to two and one–half to five years in prison, this sentence to be concurrent with the sentence imposed at No. 436.

–No. 436–

Appellant's only argument on this appeal is that the evidence was insufficient to support the convictions. In reviewing a claim with respect to the sufficiency of the evidence, "we first accept as true all the evidence upon which the finder of fact could properly have reached its verdict, and then, after giving the Commonwealth the benefit of all reasonable inferences arising from that evidence, we ask whether the evidence and the inferences arising from it are sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crimes of which he has been convicted." *Commonwealth v. Steward*, 263 Pa.Super. 191, 199, 397 A.2d 812, 815–16 (1979); *see Commonwealth v. Holmes*, 482 Pa. 97, 393 A.2d 397 (1978); *Commonwealth v. Madison*, 263 Pa.Super. 206, 397 A.2d 818 (1979). The evidence was as follows:

At approximately 1:30 a. m. on May 25, 1978, Michael Grant, the proprietor of Grant's Cycle Shop, received word

that someone was running motorcycles outside of the shop. Mr. Grant, who lived across the street from the shop, ran outside and discovered two men riding motorcycles away from the shop. He went inside the shop and discovered that it had been broken into and that two motorcycles, two jerseys, two helmets, two pairs of gloves, and approximately $50 in cash had been stolen. Most of the cash was in bills but some was in coin rolls that had the name of the shop stamped on them.

Police officers Richard Veil and James Stephens arrived at the shop at approximately 1:50 a. m. and conducted a preliminary investigation. Mr. Grant was unable to identify or describe the burglars but gave full information concerning the missing motorcycles. After they had finished interviewing Mr. Grant, the officers left to investigate another call. At approximately 2:45 a. m. they were on patrol when they heard motorcycles being ridden in an area approximately three miles from Mr. Grant's shop. Officer Veil got out of the patrol car to investigate and discovered appellant and another man riding motorcycles that fit the description of those that had been stolen. He succeeded in capturing and arresting appellant, but the other man escaped on the other motorcycle. The serial number of the motorcycle ridden by appellant matched one of those that had been stolen. Appellant was also carrying some rolls of coins that had the name of Mr. Grant's shop stamped on them.

Appellant denied any involvement in the burglary, testifying as follows. Just before 3:00 a. m., when he was home asleep, two acquaintances, Tim Sims and Jim Kelly, came to his trailer and asked to buy some gasoline. He got dressed and siphoned some gasoline from his father's truck and gave it to Sims and Kelly. They paid him for the gasoline with some rolls of coins, and put some of it into their truck and the rest into two motorcycles that were in the back of the truck. They asked appellant if he wanted to ride one of the motorcycles, and he and Sims each took one for a ride. It was during this ride that he was captured by Officer Veil and Sims escaped. Appellant's mother's testimony supported his testimony that he had been home asleep during

the time of the burglary, and had gone out with two men who called for him just before 3:00 a. m.

■ Viewed in the light most favorable to the Commonwealth, this evidence was sufficient to support appellant's convictions. It is true that no one testified to having seen appellant enter the shop and ride away from it. However, the evidence that appellant was found in possession of one of the stolen motorcycles and some of the rolls of stolen coins only ninety minutes after the burglary and only three miles away from the shop, in the very early morning hours, with another man who was riding a motorcycle that from its description had also been stolen from the shop, was sufficient evidence of circumstances on the basis of which the jury could reasonably infer that appellant and the other man were the two burglars. *See Commonwealth v. Simmons*, 233 Pa.Super. 547, 336 A.2d 624 (1975). While appellant's testimony concerning the two visitors at his trailer would, if believed, indicate that he was not guilty, the jury was free to, and obviously did, reject it as incredible. *Commonwealth v. Alston*, 461 Pa. 664, 677, 337 A.2d 597 (1975).

--457--

On this appeal appellant not only attacks the sufficiency of the evidence but also argues that his counsel was ineffective.

The evidence was as follows. On June 17, 1978, Mr. and Mrs. Edwin Barber left their house at approximately 6:00 p. m. to attend a wedding reception. All the doors were locked and all the windows were closed when they left. When they returned about midnight, they discovered their stereo in their front yard, their kitchen door open, and their house ransacked. The kitchen door apparently had not been pried or forced open from the outside and the apparent point of entry was through an open window in the living room. Missing from the house were five shotguns, a scanner, an electric drill, a hamburger grill, two bags of coins, and some whiskey and coffee. Police investigators uncovered a latent fingerprint on the television set in the living room near the open window. A police expert testified that this print was

appellant's. Mrs. Barber testified that she gave no one permission to enter the house and that she did not know appellant. Appellant denied ever entering the house and testified that during the time of the burglary, he was at his uncle's house. He could not explain the presence of his fingerprint on the television set.

■ Viewed in the light most favorable to the Commonwealth, this evidence was sufficient to support appellant's conviction of burglary and theft by unlawful taking. For other cases holding that the unexplained presence of an accused's fingerprint in a burglarized private residence near the apparent point of entry may be sufficient evidence, *see Commonwealth v. Wilson*, 258 Pa.Super. 231, 392 A.2d 769 (1978); *Commonwealth v. Hunter*, 234 Pa.Super. 267, 338 A.2d 623 (1975); *Commonwealth v. Cichy*, 227 Pa.Super. 480, 323 A.2d 817 (1974).

Appellant claims that his trial counsel was ineffective in two ways. First, he claims that by raising an issue with respect to the fingerprints that the police compared with the latent print, counsel presented evidence to the jury of appellant's prior contact with the police. Second, he claims that his uncle should have been called to testify in support of his alibi defense.

■ Appellant's first claim is without merit. Since the fingerprint was a crucial piece of evidence, appellant's counsel sought to weaken its force. As part of his strategy counsel attempted to explore the obtaining of the fingerprints used by the police expert for comparison with the latent print. Although this strategy created some risk that prejudicial evidence of appellant's prior police contact would be introduced, the record indicates that both appellant's counsel and the district attorney carefully presented the evidence in such a way that any indication of such prior police contact was avoided. Moreover, the print card of the comparison prints entered as a Commonwealth exhibit excluded any reference to dates. Thus, while there was a possibility of prejudice to appellant created by counsel's exploration of the comparison prints, in fact no prejudice occurred.

■ We cannot decide appellant's second claim of ineffective counsel on the present record because we do not know either why the uncle was not called to testify or whether his testimony would have been helpful to appellant's claim of alibi.*  Faced with such an incomplete record we must remand the case to the lower court for a hearing limited to the claim that counsel was ineffective in not calling the uncle. *See Commonwealth v. Twiggs,* 460 Pa. 105, 331 A.2d 440 (1975); *Commonwealth v. Rhodes,* 272 Pa.Super. 546, 554–555, 416 A.2d 1031, 1035 (1979).

■ The judgments of sentence in No. 436 are affirmed. The judgments of sentence in No. 457 are vacated and the case is remanded to the lower court to conduct a hearing limited to the issue of counsel's ineffectiveness in failing to call the alibi witness.  If the court finds that counsel was ineffective, it shall grant appellant a new trial.  If the court finds that counsel was effective, it shall reinstate the judgments of sentence.

* Although appellant claims that it would have been helpful.