988 A.2d 694 (2010)
In the Interest of M.J.H., Minor, Appellant.
No. 1451 Middle District Appeal 2008
Superior Court of Pennsylvania.
Submitted March 2, 2009.
Filed January 19, 2010.
*695 Scott E. Lineberry, York, for appellant.
James E. Zamkotowicz, Assistant District Attorney, for Commonwealth.
BEFORE: FORD ELLIOTT, P.J., MUSMANNO and COLVILLE,[*] JJ.
OPINION BY FORD ELLIOTT, P.J.:
¶ 1 This appeal contests the dispositional order imposed following a delinquency adjudication based upon a finding of culpability on charges of burglary and theft by unlawful taking or disposition. On appeal, appellant alleges that the evidence was insufficient to sustain his adjudications. After careful review, we reverse.
¶ 2 The relevant facts, as revealed by the testimony in this matter, are as follows. During the early morning hours of Tuesday, June 27, 2006, a family-owned clothing store located at 620 West Market Street in the city of York was burglarized and ransacked. Officers of the York City Police were dispatched to the scene. Upon arrival, Officer Sean Rosier observed that the plate glass window in the store's front door had been shattered and that two metal clothing racks inside the store had been knocked over. (Notes of testimony, 7/9/08 at 6.) During the course of the investigation, the officer determined that the perpetrator had entered the store through the front door as no other points of entry had been disturbed. (Id. at 10.)
¶ 3 Officer Jason Jay testified as an expert in the collection of fingerprints. (Id. at 54-55, 59-61.) Officer Jay testified that upon investigation, no latent fingerprints were located on the doorframe, the glass, or any other part of the store's front door. (Id. at 64-65.) However, after dusting the store, the officer lifted one identifiable fingerprint from the larger of the two clothing racks that had been overturned. Officer Jay testified that the fingerprint looked "oily or kind of shiny" and concluded that it had not been there very long. (Id. at 57, 62.) He explained that "it didn't take much powder to develop the print for collection, so in my opinion, it was fresh or it had not been there very long." (Id. at 57.)
¶ 4 At the time of the burglary, the metal clothing rack had been located by the front window of the store; it was used to hold items of clothing, and the rack was accessible to customers. (Id. at 31.) Testimony was presented that the fingerprint was located on the back of the rack where customers would not need access. (Id. at 45-48.) The fingerprint found on this rack was identified as appellant's due to an *696 AFIS[1] match. (Id. at 63.) The parties stipulated at trial that the fingerprint was that of appellant. (Id.)
¶ 5 The owners of the store, Dwayne and Marisol Beady, were contacted and came to the crime scene to observe the damage. Mr. Beady testified that items taken from his store were valued at $8,812.[2] (Id. at 8.) Mr. Beady was able to identify appellant, whom he knew from church. (Id. at 27.) Investigation by the police also revealed that appellant had been to the store as a customer and had attended at least one party at the store for children in the neighborhood. (Id. at 51.) The Beadys estimated that appellant had shopped in their store two or three times prior to the burglary and at least one time after the burglary; however, they could not accurately recall the last time appellant had been in the store prior to the burglary. (Id. at 28, 32-34, 50-51.) Mr. Beady testified that he and his wife are the only two people who work at the store. (Id. at 30.)
¶ 6 Mr. Beady testified that the store was cleaned on a weekly basis. Each Sunday after closing the store, the racks were wiped down. Mr. Beady explained that this was done in case the store was robbed. (Id. at 28-29, 41.) Mrs. Beady testified as to her presence in the store on Monday the 26th, between Sunday night when the racks were cleaned and Tuesday at 4:00 a.m. when the fingerprint was found. She testified that she "did not think" appellant had been in the store that intervening Monday. (Id. at 49.)
¶ 7 At the conclusion of the hearing, the juvenile court credited the testimony presented by the Commonwealth and found appellant to have committed the offenses of burglary and receiving stolen property; appellant was adjudicated delinquent. (Id. at 78-80.) Appellant filed a timely notice of appeal on July 9, 2008. Both appellant and the juvenile court have complied with Pa.R.A.P.1925. One issue is presented in this appeal:[3]
Whether or not evidence of appellant's fingerprint in a burglarized clothing store, standing alone, was sufficient to find appellant guilty of burglary [18 Pa. C.S.A. § 3502(a)] and theft by unlawful taking or disposition [18 Pa.C.S.A. § 3921(a)].
Appellant's brief at 4.
¶ 8 Appellant essentially argues that the evidence was insufficient to prove beyond a reasonable doubt that he was the person who committed the crimes in question. The crux of his argument is that, lacking eyewitness identification evidence or other circumstantial evidence, the fingerprint evidence alone is not sufficient to support his adjudications. Appellant maintains that because he had been to the store on previous occasions, his fingerprints could have been on the clothing rack from a previous visit. Appellant further argues that "the possibility of Appellant's innocent contact with the clothes rack is too great to sustain a finding of guilt." (Appellant's brief at 14.)
¶ 9 We begin with our standard of review.
When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof `beyond a reasonable doubt.' When considering a challenge to the sufficiency of the evidence following an *697 adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth.
In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.
The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a defendant's innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth.
In re R.N., 951 A.2d 363, 364-367 (Pa.Super.2008) (citations omitted).
¶ 10 After studied review, we are constrained to conclude that the fingerprint evidence standing alone was insufficient, as a matter of law, to adjudicate appellant delinquent of these offenses.
¶ 11 As appellant notes, the probative value of fingerprint evidence "depends entirely on the circumstances of each case." See Commonwealth v. Cichy, 227 Pa.Super. 480, 323 A.2d 817, 818 (1974). In Cichy, a burglary occurred at a gasoline service station; entry was made through a boarded window, and a cigarette machine was partially pried open. Id. Several fingerprints were lifted from various objects in the building, including one print, subsequently identified as the defendant's, from a cellophane wrapper on a package of Marlboro cigarettes found on the floor. Id. All the other fingerprints were smudged and not able to be compared. Id. On this evidence alone, the defendant was convicted of burglary and larceny of the gas station. Id.
¶ 12 On appeal, a panel of this court reversed, stating:
Although we recognize the accuracy of fingerprint evidence for purposes of identification, the probative value of that evidence depends entirely on the circumstances of each case. Unless those circumstances are such that the fingerprint could only have been impressed at the time and place the crime was committed, such evidence is insufficient to sustain a conviction.
Id. We distinguished those cases where the defendant's prints are found on objects with which he could not have had legitimate contact, such as prints on an item in a burglarized home or on a coin box from inside a vending machine. Id. at 818-819 (collecting cases). The Cichy court explained "if the prints are discovered on an object that is readily [m]ovable and [i]n common usage, the possibility of innocent contact is too great to sustain a conviction on that evidence alone." Id. at 819, citing United States v. Collon, 426 F.2d 939 (6th Cir.1970) (prints found on map in getaway car); United States v. Corso, 439 F.2d 956 (4th Cir.1971) (prints on matchbook cover used to jam lock for burglary).
¶ 13 More recently, in Commonwealth v. Henry, 875 A.2d 302 (Pa.Super.2005), a divided panel of this court reversed judgment of sentence where the defendant's fingerprint was found on an ATF placard inside a stolen vehicle.[4] In holding the *698 evidence insufficient to prove the defendant was in operation, dominion, or control of the vehicle as required by the unauthorized use statute, the Henry court stated:
His fingerprint on the placard reveals only that at some point Appellant was present in the vehicle and nothing more. Since the vehicle was found more than a day after being reported stolen with the driver's side door lock broken, Appellant could have had access to the interior of the vehicle after it was abandoned by the perpetrator who stole the car. The fingerprint alone is insufficient to establish operation, i.e., conscience [sic] control or dominion over the vehicle, beyond a reasonable doubt.
Id. at 306. Cf. Commonwealth v. Marrero, 914 A.2d 870 (Pa.Super.2006) (sufficient evidence to convict where the defendant's fingerprints were found inside the engine compartment of a stolen vehicle and the engine had been removed after the vehicle was stolen; location of the defendant's prints under the hood was not susceptible to a reasonable inference of innocent contact, and the victim testified he did not know the defendant and did not know any reason why the defendant would have been under the hood of his vehicle, distinguishing Henry, supra).
¶ 14 Herein, appellant's fingerprint was recovered at a location where his presence was explained and from an object with which he could have had innocent contact. Compare Marrero, supra (defendant's fingerprints found under the hood of stolen vehicle); Commonwealth v. Price, 278 Pa.Super. 255, 420 A.2d 527 (1980) (defendant's fingerprint found on television set in the living room near the open window, which was the apparent point of entry, and defendant could not explain the presence of his fingerprint on the television set); Commonwealth v. Wilson, 258 Pa.Super. 231, 392 A.2d 769 (1978) (defendant's fingerprints found on closet door and lamp inside burglarized residence, and victims testified defendant had never been inside the residence prior to that night). See also Commonwealth v. Hunter, 234 Pa.Super. 267, 338 A.2d 623, 626 (1975) (defendant's fingerprint was found at the place of illegal entry to the burglarized premises, on a piece of sheet metal covering a broken window ten feet above ground level). By contrast, appellant's fingerprint was found on a rack in a clothing store open to the public where anyone could have had access until the store closed, including appellant who had been in the store on previous occasions.
¶ 15 The Commonwealth relies on the testimony indicating that the fingerprint was "fresh" and the testimony that appellant was last seen in the store a week before the burglary and the owners claimed they cleaned the racks each Sunday. (Commonwealth's brief at 11.)
¶ 16 We first note that no one testified with certainty that appellant was in the store "a week before the burglary." Rather, the owners could not recall the last time appellant was in the store. Mr. Beady stated that he could not state if appellant had been in the store between the time he wiped down the racks on Sunday and the morning the store was burglarized. Mrs. Beady testified, "I don't think [appellant] came in that day," when asked if appellant was in the store the day intervening the burglary. (Notes of testimony, 7/9/08 at 49.) Rather, the Beadys could only state with certainty that appellant was in the store a week or two prior to the burglary. (Id.)
¶ 17 We also note that no testimony was presented as to what "fresh" means in *699 terms of fingerprints. In fact, the officer testified that fingerprints can remain "for a while" if left "untouched" and unaffected by "adverse weather conditions." (Id. at 68-69.) Officer Jay also stated that fingerprints can remain intact on surfaces such as glass or metal for longer periods of time than on other surfaces such as wood. (Id. at 69.) While the owners testified that they cleaned the racks once a week, there was no testimony as to the manner or materials used to clean the store or the racks.
¶ 18 Given the fact that appellant had been in the store on numerous occasions, including a time a week or two before the burglary, the circumstances cannot reasonably exclude the possibility that the fingerprint was impressed at a time and place other than that of the offense. See Cichy, supra.
¶ 19 For these reasons, we are compelled to reverse. Viewing all the evidence in the light most favorable to the Commonwealth, it is simply not sufficient to find appellant culpable beyond a reasonable doubt. To affirm the disposition in this matter would stand for the proposition that a customer who leaves a fingerprint after touching a clothing rack in a store open to the public, that store subsequently is burglarized, can be adjudicated of that offense beyond a reasonable doubt solely on the presence of his fingerprint. Such a result is untenable.
¶ 20 Order reversed and appellant discharged. Jurisdiction relinquished.
NOTES
[*] Retired Senior Judge assigned to the Superior Court.
[1] Automated Fingerprint Identification System.
[2] Subsequently, an agreement was reached lowering the restitution value to $3,702.
[3] One additional issue contained in his Rule 1925(b) statement has not been presented by appellant to our court in his brief; hence, we deem it to have been abandoned.
[4] The car belonged to an ATF agent; the placard was placed in the window to avoid ticketing by local authorities while on official business. (Id. at 303-304.)