J-S72016-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| CLINTON EDWARD WILSON, | : | |
| | : | |
| Appellant | : | No. 328 WDA 2014 |

Appeal from the Judgment of Sentence Entered August 15, 2013,
In the Court of Common Pleas of Allegheny County,
Criminal Division, at No. CP-02-CR-0002855-2012.

BEFORE:  BENDER, P.J.E., SHOGAN, J., and STRASSBURGER, J.*

MEMORANDUM BY SHOGAN, J.:                    **FILED JANUARY 16, 2015**

Appellant, Clinton Edward Wilson, appeals from the August 15, 2013,

judgment of sentence entered in the Court of Common Pleas of Allegheny

County.  We affirm.

The following is a summary of the procedural history of this case:

> On May 8, 2013, [Appellant] was tried before this
> Honorable Court without a jury, along with Co-Defendants,
> Clifford Anthony Wilson and Dayton Shelton.
>
> At the conclusion of the Non-Jury Trial, [Appellant] was
> found guilty of all charges:  Count I of Robbery (Inflicting
> Serious Bodily Injury); 1 Count of Robbery of a Motor Vehicle
> (Causing Bodily injury); 1 Count of Kidnapping, 1 Count of
> Aggravated Assault (Causing Bodily Injury); 1 Count of Unlawful
> Restraint; and 1 Count of Criminal Conspiracy.
>
> On August 15, 2013, [Appellant] was sentenced by this
> Honorable Court to not less than four (4) years, and no more
> than eight (8) years of incarceration at Count I, with a minimum

_____
*Retired Senior Judge assigned to the Superior Court.

period of probation of five (5) years, and a maximum period of five (5) years. [Appellant] also had the following conditions imposed:

> 1. No contact with the victim;
> 2. Comply with DNA Registration;
> 3. Complete a GED Program; and
> 4. Pay restitution in the amount of $750.

As to the remaining Counts, no further penalties were imposed.

[Appellant] filed Post-Sentence Motions on August 21, 2013, which were denied by Operation of Law on January 27, 2014. [Appellant] filed a timely Notice of Appeal on February 25, 2014. On February 26, 2014, this Court entered an Order requiring [Appellant] to file a Concise Statement of Matters Complained of on Appeal. On March 10, 2014, [Appellant] filed his Concise Statement per the Order of Court.

Trial Court Opinion, 6/5/14, at 2-3.

The trial court summarized the factual history of this case as follows:

On August 19, 2011 at approximately 1 a.m., the victim indicated he was sitting inside his motor vehicle, parked in front of his house and talking on the phone with his girlfriend. At that time, approximately 3-5 black males approached his vehicle. The victim stated that two black males entered his vehicle (a red 1995 Pontiac Firebird), put a gun to his head and pushed him into the back seat. The victim, during the [t]rial, identified one of the males in the car with him, the one in the driver's seat, as [. . .] Dayton Shelton.

The victim next testified he struggled with one male holding a gun; he attempted to take the gun away, unsuccessfully, when another male pointed a gun/rifle at his head. He was then hit with a stun gun. The victim stated he was then driven to a set of row houses and brought outside the vehicle. The males started to hit him in the face with their guns. The victim next identified the other individuals in the alley way. He stated two of them were in Court [. . . .] The record then

reflected the victim's identification of [Appellant] and Clifford Anthony Wilson.

The victim indicated he was then dragged into an abandoned row house and put in the basement. The victim testified the men duct taped his hands and feet together, and put tape over his mouth. The victim clearly testified that he never met any of these individuals before that day.

According to the victim, [Appellant] asked him where the money was, and hit him across the face with the butt end of his gun. The victim stated that [Appellant] asked the victim to call his cousin, Frank Harris, for $150,000 or they would kill him. The victim stated he gave [Appellant] Mr. Harris' cell phone number, and that man called Mr. Harris to make the demand.

After the men left the abandoned house, the victim stated that he acquired a nail and used it to break the tape from around his ankles and wrists. The victim next crawled out a back window and escaped from the building. The victim stated he realized he was a half block away from his home. When he arrived at his home, his cousin, Frank Harris, and his nephew were sitting in front of the house, and within 3-4 minutes the Police arrived.

Eventually, the victim indicated he was able to search his home to see if anything was missing. He noticed the living room television, the bedroom television, and his PlayStation were missing. The values of the items were approximately $2,300.

After the Police arrived, they showed [Appellant] some photographs and he was able to identify Dayton Shelton from that night. Later, Detective Duncan showed him a photo array and he also identified Clifford Anthony Wilson. Detective Duncan showed him another photo array, and again he was able to identify Dayton Shelton.

The victim stated he sustained a shattered cheek bone, a broken nose, scars and lacerations due to the incident that required hospitalization.

Detective Charlotte Hughes, from the Mobile Crime Unit, testified for the Commonwealth. She indicated she was assigned to meet with the Robbery Detectives and execute a Search Warrant on a Pontiac Firebird. The first thing she did was photograph the vehicle, then took DNA samples, photographed the inside of the vehicle, and dusted it for fingerprints.

Detective Hughes identified Commonwealth's Exhibit No. 3, a photo of the trunk of the car, which showed a roll of masking tape. She also fingerprinted five (5) CD's located in the passenger compartment, and she obtained four (4) fingerprints from these CD's. Once she lifted the fingerprints from the CD's, she took them back to the Office and they were submitted to the Latent Print Examiner, John Godlewski.

John Godlewski also testified for the Commonwealth. He stated he has been a Police Officer for twenty-one (21) years, with the last fourteen (14) years being with the Pittsburgh Mobile Crime Unit. He stated he is a Certified Latent Fingerprint Examiner.

He testified that there were five (5) fingerprints involved in this case that were evaluated to determine their value, either of value, or no value. Once completed, four of the latented lifts were determined to be of value. One of the lifts was submitted through the automated system AFIX.

Detective Godlewski testified that as a result of AFIX, he then compared the latent fingerprints to the known prints of Clinton Edward Wilson. The four lifts of value in this case were determined to match Wilson's impressions.

* * *

Finally, Detective Godlewski opined the determinations he made about these fingerprints [on one of the CD's] belonging to [Appellant] are held to a very high degree of scientific certainty.

Trial Court Opinion, 6/5/14, at 5-9 (internal citations omitted).

Appellant presents the following issue for our review:

> 1. Did the Trial Court err in determining that the fingerprint evidence was sufficient to sustain a conviction as to robbery of a motor vehicle, and kidnapping, when it could not establish when the fingerprints were left and when the fingerprints were recovered from movable property inside the motor vehicle?

Appellant's Brief at 4.[1]

When reviewing challenges to the sufficiency of the evidence, we evaluate the record in the light most favorable to the Commonwealth as verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. **Commonwealth v. Duncan**, 932 A.2d 226, 231 (Pa. Super. 2007) (citation omitted). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." **Id**. (quoting **Commonwealth v. Brewer**, 876 A.2d 1029, 1032 (Pa. Super. 2005)). However, the Commonwealth need not establish guilt to a mathematical certainty, and it may sustain its burden by means of wholly circumstantial evidence. **Id**. Moreover, this Court may not

---

[1] We note that Appellant challenges the sufficiency of the evidence on the robbery of a motor vehicle and kidnapping charges in his appellate brief. When challenging the sufficiency of the evidence on appeal, the Appellant's Pa.R.A.P. 1925 statement must "specify the element or elements upon which the evidence was insufficient" in order to preserve the issue for appeal. **Commonwealth v. Gibbs**, 981 A.2d 274, 281 (Pa. Super. 2009) (citations omitted). However, Appellant failed to articulate in his Pa.R.A.P. 1925(b) statement the specific charges he was challenging, let alone identify any of the specific elements of the crimes he was challenging. For this reason, we could find his claims waived. **Gibbs**, 981 A.2d at 281. For purposes of this appeal, nonetheless, we find that his claims are sufficiently preserved to allow this Court to conduct review of his issue.

substitute its judgment for that of the factfinder, and where the record contains support for the convictions, they may not be disturbed. *Id*. Lastly, we note that the finder of fact is free to believe some, all, or none of the evidence presented. ***Commonwealth v. Hartle***, 894 A.2d 800, 804 (Pa. Super. 2006).

Appellant asserts that the evidence submitted by the Commonwealth was insufficient as a matter of law to convict him of kidnapping and robbery of a motor vehicle. Appellant's Brief at 11. Appellant maintains that the fingerprint evidence recovered on the CD's from within the passenger compartment of the victim's car was insufficient to establish Appellant's guilt of these crimes. *Id.* at 12. Appellant argues that the evidence of record, including the victim's testimony and the fingerprint evidence, does not place Appellant "inside or near the vehicle on the evening of August 19, 2012." *Id.* at 14.

Upon review of the issue raised, the credibility determinations made by the trial court, the certified record, the briefs of the parties, and the applicable legal authority, we conclude that the trial court opinion entered on June 5, 2014 comprehensively and correctly disposes of Appellant's appeal. Accordingly, we affirm Appellant's judgment of sentence, and we do so based on the trial court's opinion. The parties are directed to attach a copy of that opinion in the event of further proceedings in this matter.

Judgment of sentence affirmed.   Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/16/2015

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,

V.

CLINTON EDWARD WILSON,

Defendant

CRIMINAL DIVISION

CC 2011-10556 *2012-02855*

328 WDA 2013

OPINION

FILED BY:

THE HONORABLE PHILIP A. IGNELZI

COPIES SERVED BY FIRST CLASS MAIL UPON:

COUNSEL FOR PLAINTIFF:

MICHAEL W. STREILY, ESQUIRE
DISTRICT ATTORNEY'S OFFICE
436 GRANT STREET, RM 303
COURTHOUSE
Pittsburgh, PA 15219

COUNSEL FOR DEFENDANT:
BRANDON M. HERRING, ESQUIRE
429 Forbes Avenue, Suite 1405
Pittsburgh, PA 15219

FILED

2011 JUN -5 AM 10: 51

DEPT. OF COURT RECORDS
CRIMINAL DIVISION
ALLEGHENY COUNTY PA

(24)

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,    CRIMINAL DIVISION

CC 2012-02855

328 WDA 2014

V.

CLINTON EDWARD WILSON,

Defendant

OPINION

IGNELZI, J.

On May 8, 2013, the Defendant, Clinton Edward Wilson ("Defendant") was tried before this Honorable Court without a jury, along with Co-Defendants, Clifford Anthony Wilson and Dayton Shelton.

At the conclusion of the Non-Jury Trial, the Defendant was found guilty of all charges: Count I of Robbery (Inflicting Serious Bodily Injury); 1 Count of Robbery of a Motor Vehicle (Causing Bodily Injury); 1 Count of Kidnapping; 1 Count of Aggravated Assault (Causing Bodily Injury); 1 Count of Unlawful Restraint; and 1 Count of Criminal Conspiracy.

1

On August 15, 2013, the Defendant was sentenced by this Honorable Court to not less than four (4) years, and no more than eight (8) years of incarceration at Count I, with a minimum period of probation of five (5) years, and a maximum period of five (5) years. The Defendant also had the following conditions imposed:

1. No contact with the victim;
2. Comply with DNA Registration;
3. Complete a GED Program; and
4. Pay restitution in the amount of $750.

As to the remaining Counts, no further penalties were imposed.

The Defendant filed Post-Sentence Motions on August 21, 2013, which were denied by Operation of Law on January 27, 2014. The Defendant filed a timely Notice of Appeal on February 25, 2014. On February 26, 2014, this Court entered an Order requiring the Defendant to file a Concise Statement of Matters Complained of on Appeal. On March 10, 2014, the Defendant filed his Concise Statement per the Order of Court.

## MATTERS COMPLAINED OF ON APPEAL

The Defendant raises the following issues on Appeal:

1. The evidence involving him in the specific actions of kidnapping, Aggravated Assault and Robbery was of such poor quality as to shock the conscience of the Court. Specifically:

   a. The testimony of the victim, Kevin T. Burrell, ("victim") was so riddled with contradictions and evasions as to be wholly lacking credibility.

   b. The victim was never able to make a positive identification of the Defendant.

   c. The Commonwealth's sole evidence linking the Defendant to the crime, four fingerprints found on CD's inside the motor vehicle, was not sufficient to establish the Defendant's involvement beyond a reasonable doubt.

2. The Defendant contends the evidence against him was insufficient as a matter of law to sustain his conviction.

## FACTUAL SUMMARY

On August 19, 2011 at approximately 1 a.m., the victim indicated he was sitting inside his motor vehicle, parked in front of his house and talking on the phone with his girlfriend **T.T. of May 8-9, 2013 ("T.T.") at p.p. 13-14.** At that time, approximately 3-5 black males approached his vehicle. **T.T. at p. 14.** The victim stated that two black males entered his vehicle (a red 1995 Pontiac Firebird), put a gun to his head and pushed him into the back seat. **T.T. at p.p. 14-15.** The victim, during the Trial, identified one of the males in the car with him, the one in the driver's seat, as being in Court wearing a yellow and blue shirt. The record then reflected the victim identified Dayton Shelton. **T.T. at p.p. 18-19.**

The victim next testified he struggled with one male holding a gun; he attempted to take the gun away, unsuccessfully, when another male pointed a gun/rifle at his head. He was then hit with a stun gun. **T.T. at p.p. 64-65.** The victim stated he was then driven to a set of row houses and brought outside the vehicle. The males started to hit him in the face with their guns. **T.T. at p.p. 16-19.** The victim next identified the other individuals in the alley way. He stated two of them were in Court today; one wearing a cream colored shirt with a blue stripe, and the other wore a white dress shirt. The record then reflected the

victim's identification of Defendant, Clinton Edward Wilson and Clifford Anthony Wilson. **T.T. at p.p. 20-21.**

The victim indicated he was then dragged into an abandoned row house and put in the basement. **T.T. at p. 27.** The victim testified the men duct taped his hands and feet together, and put tape over his mouth. **T.T. at p.p. 81 & 83.** The victim clearly testified that he never met any of these individuals before that day. **T.T. at p. 23.**

According to the victim, Defendant asked him where the money was, and hit him across the face with the butt end of his gun. **T.T. at p. 26.** The victim stated that Defendant asked the victim to call his cousin, Frank Harris, for $150,000 or they would kill him. **T.T. at p. 30.** The victim stated he gave the Defendant in the white shirt Mr. Harris' cell phone number, and that man called Mr. Harris to make the demand. **T.T. at p.p. 31-32.**

After the men left the abandoned house, the victim stated that he acquired a nail and used it to break the tape from around his ankles and wrists. **T.T. at p.p. 33-34.** The victim next crawled out a back window and escaped from the building. **T.T. at p.p. 34 & 86.** The victim stated he realized he was a half block away from his home. When he arrived at his home, his cousin, Frank Harris,

5

and his nephew were sitting in front of the house, and within 3-4 minutes the Police arrived. **T.T. at p.p. 34-35.**

Eventually, the victim indicated he was able to search his home to see if anything was missing. He noticed the living room television, the bedroom television, and his PlayStation were missing. The values of the items were approximately $2,300. **T.T. at p. 35.**

After the Police arrived, they showed him some photographs and he was able to identify Dayton Shelton from that night. **T.T. at p. 36.** Later, Detective Duncan showed him a photo array and he also identified Clifford Anthony Wilson. **T.T. at p. 38.** Detective Duncan showed him another photo array, and again he was able to identify Dayton Shelton. **T.T. at p.p. 39-40.**

The victim stated he sustained a shattered cheek bone, a broken nose, scars and lacerations due to the incident that required hospitalization. **T.T. at p. 40.**

Detective Charlotte Hughes, from the Mobile Crime Unit, testified for the Commonwealth. She indicated she was assigned to meet with the Robbery Detectives and execute a Search Warrant on a Pontiac Firebird. **T.T. at p.p., 89-90.** The first thing she did was photograph the vehicle, then took DNA

6

samples, photographed the inside of the vehicle, and dusted it for fingerprints. **T.T. at p. 91.**

Detective Hughes identified Commonwealth's Exhibit No. 3, a photo of the trunk of the car, which showed a roll of masking tape. **T.T. at p. 92.** She also fingerprinted five (5) CD's located in the passenger compartment, and she obtained four (4) fingerprints from these CD's. **T.T. at p. 93.** Once she lifted the fingerprints from the CD's, she took them back to the Office and they were submitted to the Latent Print Examiner, John Godlewski. **T.T. at p. 94.**

John Godlewski also testified for the Commonwealth. He stated he has been a Police Officer for twenty-one (21) years, with the last fourteen (14) years being with the Pittsburgh Mobile Crime Unit. He stated he is a Certified Latent Fingerprint Examiner. **T.T. at p. 97.**

He testified that there were five (5) fingerprints involved in this case that were evaluated to determine their value, either of value, or no value. Once completed, four of the latented lifts were determined to be of value. One of the lifts was submitted through the automated system AFIX. **T.T. at p. 99.**

Detective Godlewski testified that as a result of AFIX, he then compared the latent fingerprints to the known prints of Clinton Edward Wilson. The four

7

lifts of value in this case were determined to match Wilson's impressions. **T.T.at p. 100.**

Detective Godlewski indicated that when you examine and compare, in detail, the known fingerprint to the latent fingerprint, there are three levels that you go through. He further stated fingerprints are formed before birth and remain unchanged throughout one's life, except for severe scarring and burning. **T.T. at p.p. 102-103.** To date, he relayed that no two fingerprints from two different people have ever been found to be the same. **T.T. at p. 103.**

Finally, Detective Godlewski opined the determinations he made about these fingerprints on the Friday the 13th CD belonging to Mr. Clinton E. Wilson are held to a very high degree of scientific certainty. **T.T. at p. 103.**

At the conclusion of the Bench Trial, this Court made the following ruling:

> **"The Court has listened to all the evidence, and the Court feels the Commonwealth has met its burden of proof as to every charge, as to every Defendant. I find each Defendant guilty of each count as charged. That's the Court's Verdict."**

**T.T. at p. 179.**

Defendant's Appeal to Superior Court was thereafter timely filed.

## ANALYSIS/DISCUSSION

The Defendant's main contention on Appeal is that the fingerprint evidence alone, without a proper identification by the victim, is insufficient to support his convictions for Robbery, Robbery of a Motor Vehicle, Kidnapping, Aggravated Assault, Unlawful Restraint, and Criminal Conspiracy, especially because there were other possible explanations for the presence of his fingerprints on the CD's.    Defendant further alleges:

1. The victim was inconsistent in his testimony as to the number of individuals that attacked him initially, and his accounts varied from as few as 2 to as many as 6 attackers;

2. The victim was never able to make a positive identification of the Defendant, and, as such, none of his testimony specifically linked the Defendant to the criminal incident;

3. The Commonwealth's sole evidence linking the Defendant to the crime, the four (4) fingerprints, was not sufficient to establish the Defendant's involvement beyond a reasonable doubt; and

4. Defendant contends the evidence against him was insufficient as a matter of law to sustain his conviction.

In the recent decision of *Commonwealth v. Donohue*, 62 A.3d 1033, 1035-37, (Pa. Super. 2013), the Superior Court upheld a Defendant's Burglary conviction when the Commonwealth presented evidence that the Defendant's fingerprints were found on an open soda bottle found in the burglarized

9

residence. The owner of the home testified that the soda bottle was unopened in a cabinet when she left the home the night before. Further, the owner asserted that she never gave the Defendant permission to be in her home. Upon affirming the Defendant's Judgment of Sentence, the Superior Court thoroughly discussed past decisions which analyzed whether fingerprint evidence constitutes sufficient proof to sustain a conviction.

The seminal decision of *Commonwealth v. Cichy*, 323 A.2d 817, (Pa. Super. 1974), was an Appeal from a Judgment of Sentence for Burglary and Larceny. The only question was whether the Commonwealth presented sufficient evidence to sustain a conviction on the crimes charges.

In *Cichy,* a burglary occurred at a gas station one evening. The following morning, the owners arrived and found tools and other articles missing. Entry was made through a boarded window, and a cigarette machine was partially pried open. A Police Investigation "lifted several fingerprints from objects in the building, including one from a cellophane wrapper on a package of Marlboro cigarettes found on the floor. All of the prints were found to be of no value, except for the one on the cellophane. The Police expert identified the print as belonging to the Appellant, *Cichy.* Based entirely upon this evidence, *Cichy* was convicted of the Burglary and Larceny. His Appeal followed. *Id.* at 819.

10

The Superior Court in *Donohue* discussed the *Cichy* opinion stating:

> ...the accuracy of fingerprint evidence for purposes of identification is established and that the probative value of that evidence depends entirely on the circumstances of each case. Unless the circumstances are such that the fingerprint could only have been impressed at the time and place the crime was committed, such evidence is insufficient to sustain a conviction. On the other hand, where circumstances indicate impression at the time of the crime, and the Defendant's innocent presence is excluded, such evidence has been held sufficient to convict.
>
> Under these precepts, a conviction will be upheld where fresh fingerprints are found at the place of illegal entry to private burglarized premises where a defendant's presence is unexplained. Similarly, if the prints are discovered in a place accessible only by force or on objects that the defendant could not have contacted under legitimate circumstances, a conviction will be upheld. However, the mere discovery of prints in a public place, with which a number of people may have had innocent contact is insufficient by itself to convict. Additionally, if the prints are located on a readily movable object in common usage and the possibility of innocent contact with that object is great, the conviction will not be sustained.
>
> A comparison of the fingerprint cases established the uniform application of these principles in *Cichy*, the defendant was convicted solely based on the fact that his fingerprints were discovered on a cigarette pack located next to a vending machine in a public venue that was burglarized. We ruled that the conviction was infirm, given that the defendant admittedly had visited the scene of the burglary during normal business hours before the date of the burglary, no prints were discovered on the cigarette machine, and there was no indication that the cigarette package with the defendant's prints was taken from the machine. Thus, in *Cichy,* there was an innocent

11

explanation for the presence of the prints on the package, which could have been left behind when the defendant was on the premises during business hours. We concluded that the discovery of the prints on a movable object in a public venue is insufficient to establish a person's presence at the crime scene during the commission of the crime.

*Donahue*, 62 A.3d at p. 1036. (citations and quotations omitted).

In the case of *In re M.J.H.*, 988 A.2d 694 (Pa. Super. 2010), the Superior Court applied *Cichy* and overturned an adjudication of delinquency that was based upon the juvenile's commission of acts constituting burglary and theft. In *In re: M.J.H.*, a clothing store was torn apart and burglarized, and the juvenile's fingerprints were found on a clothing rack clearly open to the public, but not at or near the point of the illegal entrance into the store. In addition, evidence was introduced that, on two or three occasions prior to the burglary, the juvenile was observed in the store during regular operating hours.

Because the juvenile's fingerprints were discovered at a location where his presence was explained through innocent behavior and from an object with which he could have had legal/innocent contact, the Superior Court found that the possibility that the juvenile had made legitimate contact with the clothing rack was too great to permit a finding that he was the one who ransacked and burglarized the store.

12

However, in numerous other cases, Pennsylvania Courts have upheld the sufficiency of the evidence supporting a conviction premised solely on the fact that the defendant's fingerprints were at the scene of the crime. Pursuant to these decisions, fingerprints can support sufficient evidence for a conviction as long as the facts exclude an innocent explanation for the presence of the defendant's imprints on an object. *Donohue*, 62 A.3d at 1037.

In *Commonwealth v. Price*, (278 Pa. Super. 255), 420 A.2d 527, (Pa. Super.1980), the Superior Court upheld a conviction of burglary based upon fingerprint evidence alone. The defendant was convicted of burglarizing a private home, and the lone evidence linking him to that crime was the fact that, after the burglary, his imprints were discovered on a television located in the residence near the point of illegal entry. The homeowners left their house at 6:00 p.m., locked it, and closed the window. When they returned six hours later, they discovered items had been taken from their home. There were no fingerprints at the point of entry, an opened window, but the defendant's fingerprints were found on a television near the window. The owners testified that they did not know the defendant and that he did not have permission to enter their residence. Since there was no plausible innocent explanation for the defendant's imprints

13

on the television, the Superior Court ruled that the evidence was sufficient to uphold the conviction.

In *Commonwealth v. Wilson*, (258 Pa. Super. 231), 392 A.2d 769 (Pa. Super.1978), the defendant and a co-conspirator burglarized a private residence and terrorized the occupants. The owners testified they never met the defendant before. The defendant's identification as a burglar was based on the fact that his fingerprints were found inside the house. The defendant challenged the sufficiency of the evidence, and he claimed that "lacking eyewitness identification evidence or other circumstantial evidence, fingerprint evidence alone is not sufficient to convict him." *Id.* at 771.

The Superior Court again disagreed with his sufficiency challenge because there was "simply no logical explanation for finding [defendant's] fingerprints on the lamp and closet in the ...residence, except that he inadvertently placed them there while burglarizing the ...home and terrorizing its occupants." *Id.*

Based upon foregoing case law and this Court's review of the Trial Transcript, it is abundantly clear that Defendant's convictions must be upheld for the following reasons:

a) Defendant's presence in the vehicle was unexplained;

b) His prints were discovered in a place accessible only by illegitimate/illegal circumstances;

c) The motor vehicle was a private, not public place;

d) Although the prints were on a movable object, it was in a private motor vehicle and there was no logical explanation as to why Defendant's prints were in the CD;

e) The victim testified that he never met the Defendant prior to the day in question, and as such, Defendant could not have been in the victim's car with permission anytime prior to the crime in question; and

f) The victim positively identified the Defendant in Court during the Trial as one of the perpetrators of the crime.

## CONCLUSION

Based upon all of the above, this Court respectfully requests the convictions of Defendant be upheld and his Appeal be **DENIED**.

BY THE COURT:

Dated: 6/5/2014                                        _____, J.

15