J-A15025-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: Q.C., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: Q.C., A MINOR | No. 2237 EDA 2014 |

Appeal from the Dispositional Order July 8, 2014
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-JV-0004347-2013

BEFORE:  BOWES, J., MUNDY, J., and FITZGERALD, J.[*]

MEMORANDUM BY MUNDY, J.:　　　　　　　　**FILED OCTOBER 07, 2015**

Appellant, Q.C., a juvenile, appeals from the juvenile court's July 8, 2014 order of disposition, following an adjudication of delinquency for burglary and conspiracy.  Q.C. challenges the sufficiency of the evidence supporting his adjudication.  After careful review, we reverse.

The certified record reveals the history of this case.  On December 13, 2013, a delinquency petition was filed, alleging Q.C. committed the offenses of burglary, criminal trespass, criminal mischief, theft by unlawful taking, receiving stolen property, and loitering and prowling at night.[1]  It was averred that Q.C., together with others, took a vehicle from the premises of

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3502(a)(4), 3503(a)(1)(ii), 3304(a)(4), 3921(a), 3925(a), and 5506, respectively.

Complainant, Harrison Motors, a used car dealership. By oral motion, granted by the juvenile court prior to the adjudication hearing, the petition was amended to add the charges of unauthorized use of a motor vehicle, and conspiracy to commit burglary.[2] An adjudication hearing took place on June 18, 2014.

At the adjudication hearing, the Commonwealth called four witnesses. Officer Katie Lankford testified about the initial investigation into an accident at 30th Street and Girard Avenue in Philadelphia on July 6, 2013, involving an abandoned Dodge Caravan. The investigation led to Complainant's used car establishment, where police noticed a damaged open gate and several apparently disturbed and damaged vehicles. Officer Lankford testified about the damage observed on five vehicles on the lot and identified a photograph of the damaged gate, marked as Commonwealth exhibit C-1(A).

William Bland, property manager for Complainant, testified that he had secured the premises the evening before, and that there was no damage to the gate or vehicles at that time. Bland described photographs of the scene, marked as Commonwealth exhibits C-1(B) to (J), depicting the state of the damage on the night of the incident. Bland acknowledged the Dodge Caravan involved in the accident on Girard Avenue came from Complainant's lot. Bland described Complainant's security system and stated he pulled video and still shots from the surveillance equipment. He described three

---

[2] 18 Pa.C.S.A. §§ 3928, and 903, respectively.

still shots marked as Commonwealth exhibits C-2(A) to (C). Bland testified that the premises upon which the vehicles were located was routinely open to the public during regular business hours. Marvin Harrison, also a proprietor of Complainant, testified that the total damage to the vehicles and the gate was $26,000.00.

Detective Earl Martin, testified that, as part of his investigation, he obtained two useful prints, including a partial right hand palm and right little finger print found on the outside front driver-side window of one of the damaged vehicles on the lot. The parties stipulated that the prints were a match for Q.C. Q.C. was not a match for prints obtained from the Dodge Caravan.

Q.C. did not testify or present any witnesses. Following the testimony and arguments by counsel, the juvenile court adjudicated Q.C. delinquent on the burglary and the conspiracy charges and determined the remaining charges had not been proven beyond a reasonable doubt. A dispositional hearing was held on July 8, 2014, at which the juvenile court, noting Q.C. was subject to placement through an unrelated dependency matter, ordered

Q.C. to remain in current placement per that matter.[3]  Q.C. filed a timely notice of appeal on July 30, 2014.[4]

On appeal, Q.C. raises the following single issue for our review.

> Was not the evidence insufficient to prove beyond a reasonable doubt that the juvenile committed delinquent acts which, if committed by an adult, would constitute the crimes of burglary and conspiracy because the evidence failed to prove beyond a reasonable doubt that it was the juvenile who committed said delinquent acts?

Q.C.'s Brief at 3.

We note the following standards guiding our review of this issue.  Our Supreme Court explained that, "the Juvenile Act requires a juvenile court to find that a child has committed a delinquent act *and* that the child is in need of treatment, supervision, or rehabilitation, before the court may enter an

_____

[3] At a subsequent dispositional review hearing held August 5, 2014, the juvenile court placed Q.C. on probation.

[4] Appellant has complied with Pennsylvania Rule of Appellate procedure 1925(b).  In lieu of a Rule 1925(a) opinion, the trial court filed a "Request the Matter be Remanded and Jurisdiction be Relinquished," stating as follows.

> Based upon in depth legal research and review of the case law balanced with the specific fact pattern in the matter *sub judice*, [the trial] court, respectfully, requests that the case be remanded and jurisdiction be relinquished back to the trial court to reverse it[s] ruling and enter an appropriate verdict consistent with [the trial c]ourt's discovered findings.

Trial Court's Request the Matter be Remanded and Jurisdiction be Relinquished, 9/30/14, at 1.

adjudication of delinquency." ***Commonwealth v. M.W.***, 39 A.3d 958, 964

(Pa. 2012) (emphasis in original).

In evaluating a challenge to the sufficiency of the evidence supporting an adjudication of delinquency, our standard of review is as follows:

When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth.

In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.

The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a [juvenile's] innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth.

*In re V.C.*, 66 A.3d 341, 348-349 (Pa. Super 2013), *quoting In re A.V.*, 48 A.3d 1251, 1252–1253 (Pa. Super. 2012), *appeal denied*, 80 A.3d 778 (Pa. 2013).

Q.C. concedes the Commonwealth proved that the crimes of burglary and conspiracy indeed occurred at Complainant's premises between July 5, 2013 and July 6, 2013. Q.C.'s Brief at 11. Q.C. contends, however that "the evidence presented which putatively identified [Q.C.] as one of the perpetrators was insufficient as a matter of law." *Id.* Q.C. maintains that the sole evidence linking him to the burglary is the presence of his handprint on the exterior front driver-side window of one of the damaged vehicles on the lot. *Id.* at 13. Because the evidence established that the car lot in question was open to the public during business hours, and no testimony was elicited that the prints could not have been innocently impressed upon the window prior to the evening of July 5, 2013, Q.C. argues that the fingerprint evidence is insufficient to identify him as a perpetrator of the crimes. *Id.* at 13-14.

In support of his argument, Q.C. cites this Court's seminal decision in *Commonwealth v. Cichy*, 323 A.2d 817 (Pa. Super. 1974). Therein, reviewing cases from other state and federal jurisdictions, the *Cichy* Court concluded "the mere discovery of prints in a public place with which a number of people may have had innocent contact is insufficient by itself to convict." *Id.* at 818.

> If the Commonwealth[] can establish that the prints were impressed at or about the time the crime was committed or other circumstances indicate impression at that time, and the defendant's innocent presence is excluded, such evidence has been held sufficient to convict. On the other hand, the evidence loses all probative value if the time of impression is not reasonably limited to the time of the crime, and the prints found in a generally accessible location.

*Id.* at 227 (citations omitted). Thus, the *Cichy* Court noted the probative value of fingerprint evidence "depends entirely on the circumstances of each case." *Id.* at 118.

In *Cichy*, the defendant's fingerprints were found on a cigarette pack located on the floor near a vending machine in a public area of the burglarized premises. *Id.* The *Cichy* Court held that the fingerprint evidence, standing alone, was insufficient to identify Appellant as a perpetrator of the burglary. *Id.* at 819; *see also In the Interest of M.J.H.*, 988 A.2d 694, 699 (Pa. Super. 2010) (holding that the appellant's fingerprints located on a clothes rack in a clothes store open to the public during business hours were insufficient to identify Appellant as a perpetrator of the burglary); *Commonwealth v. Henry*, 875 A.2d 302, 306 (Pa. Super. 2005) (holding that the appellant's fingerprints located on a placard located inside a stolen vehicle, that had been abandoned for a period of time before discovery, were insufficient to identify the appellant as a perpetrator of the unauthorized use of the motor vehicle, because the appellant could have had

access to the interior during the period of abandonment without an intent to exercise control or dominion over it).

Q.C. concludes, therefore, as follows.

> Under these circumstances, where the prints in question could have reasonably been left at a public location by a defendant under innocent circumstances, and there is otherwise a lack of circumstantial evidence suggesting guilt, the law in Pennsylvania is clear that fingerprint evidence alone is insufficient to establish identification of that defendant as the perpetrator of the charged crimes.

Q.C.'s Brief at 13-14.

The Commonwealth counters that the circumstances of this case distinguish it from *Cichy* and other cases relied on by Q.C. Commonwealth's Brief at 9-11. First, the Commonwealth distinguishes *Cichy* by citing cases where the fingerprints were in a location "not susceptible to a reasonable inference of innocent contact." *Id.* at 9, *quoting* *Commonwealth v. Marrero*, 914 A.2d 870, 872 (Pa. Super. 2006). The Commonwealth additionally attempts to distinguish *Cichy* and *M.J.H*, averring that in those cases, unlike the instant case, "specific evidence was presented that the accused had in fact previously visited the victimized business as a legitimate customer."

> [Q.C.'s] argument ignores that the thirteen-year-old defendant was not a potential buyer of a used car, and that his prints were found not on some innocuous public surface within the lot likely to be grazed by a licensee but impressed on the driver's side window of one of the five cars which were driven and damaged during the burglary. To reach

> the conclusion defendant suggests, this Court would not only have to read the record in the light most favorable to him, and draw all reasonable inferences in his favor, but to assume a highly unlikely coincidence.

Commonwealth's Brief at 12. We disagree.

We find the cases relied on by the Commonwealth to be distinguishable. In those cases, either the location of the print was not in a place open to the public or to which the defendant had access, or other circumstances demonstrated the prints were deposited during the commission of the offense in question. In **Marrero**, this court found that a fingerprint provided sufficient evidence of identification where Marrero's prints were found inside the engine compartment of a stolen vehicle that had its engine removed and there was no legitimate public access to that location. **Marrero**, **supra** at 873; **see also Commonwealth v. Donohue**, 62 A.3d 1033, 1037 (Pa. Super. 2013) (holding that defendant's fingerprint found on an opened soda bottle in victim's basement, which had been unopened in the kitchen the evening before the subject burglary where copper piping had been stolen from the basement, was sufficient to identify the appellant, who was unknown to the victim, as a perpetrator of the burglary), *appeal denied*, 74 A.3d 125 (Pa. 2013); **Commonwealth v. Wilson**, 392 A.2d 769, 771 (Pa. Super. 1978) (holding that defendant's fingerprint found on a closet door and an electric cord used to bind a victim during a home invasion was sufficient to identify the appellant as a

perpetrator of the burglary where the victims testified that the defendant had not been in their home before); ***Commonwealth v. Hunter***, 338 A.2d 623, 624 (Pa. Super 1975) (holding that defendant's fingerprint found on a piece of sheet metal used to cover a window 10 feet off the ground, through which access to the building was gained during a burglary, was sufficient to identify the appellant as a perpetrator of the burglary).

Unlike the cases cited, the fingerprints found in the instant case were not in an area restricted from public access or at an entry point of a burglary where innocent contact is improbable. Contrary to the Commonwealth's assertion, we conclude the possibility of Q.C.'s innocent presence on the car lot during business hours sometime prior to the burglary is not dependent on his status as a potential customer. Nor do we conclude the location of the prints on the exterior of a driver-side window is an unlikely location to be contacted by one casually browsing and inspecting cars on the lot. Critical to our analysis, as well, is the fact that the Commonwealth, in the evidence presented at the adjudication hearing, provided no indication of the age of the prints, no indication that Q.C. was not or could not have been on the premises prior to the burglary, and no indication of the last time the subject surface had been cleaned. ***Compare Marrero***, ***supra***, ***Donohue***, ***supra***, ***Hunter***, ***supra***, and ***Wilson***, ***supra***. Thus, the inferences urged on us by the Commonwealth, that the fingerprints could only have been made during the burglary, stem merely from the existence of the prints themselves and

not from any additional evidence of the circumstances of the case as required by *Cichy*. *See Cichy*, *supra* at 227. For these reasons, we conclude the Commonwealth's claim that the fingerprint evidence in this case was sufficient to identify Q.C. as a perpetrator in the burglary is meritless.

The Commonwealth also argues that the instant case is distinguishable from *Cichy* because there is additional photographic evidence of Q.C's presence during the burglary. Commonwealth's Brief at 10-11. "Importantly, in all of the cases [Q.C.] cites, fingerprints were the only evidence that the accused was the perpetrator. Here, by contrast, defendant's participation was corroborated by the photograph stills taken from the security surveillance video." *Id.* at 13.

The photographs alluded to by the Commonwealth were identified as exhibits C-2(A) to (C) and were authenticated and described by Commonwealth witness, Bland. *See* N.T., 6/18/14, at 22-25. However, as pointed out by Q.C., the Commonwealth never moved for the admission of the photographs. *See* Q.C.'s Brief at 12. Our review of the entire record confirms this. Accordingly, the photographs themselves are not evidence in this case and could not be considered by the trial court as fact-finder. *See Commonwealth v. Canales*, 311 A.2d 572, 575 (Pa. 1973) (holding that when items are not admitted into evidence, they do not qualify as exhibits for consideration by a jury); *Commonwealth v. Hemingway*, 534 A.2d

1104, 1106 (Pa. Super. 1987) (noting that a failure to move a photo into evidence waives any right to admission).[5]   Accordingly, only the testimony elicited from Bland relative to what the photographs depict may be considered to determine if they provide corroborating evidence of Q.C.'s presence during, and participation in, the burglary.   As can readily be discerned, the relevant testimony from Bland is not corroborative evidence because he acknowledged that he could not identify Q.C. as a perpetrator based on the images.   The relevant testimony is set forth in full as follows.

> [ASSISTANT DISTRICT ATTORNEY]:      Your Honor, I'm going to show the witness for identification purposes what I'm marking as C-2, A through C.
>
> BY [ASSISTANT DISTRICT ATTORNEY]:
>
> Q.     Mr. Bland, I show you what I have marked as C-2.  Do you recognize C-2?
>
> A.     Yes.
>
> Q.     Okay, what is C-2.
>
> A.     Inside the lot.
>
> Q.     Okay, what is depicted there?
>
> A.     It shows someone in the lot.

---

[5] Both the Commonwealth and Q.C. reference certain comments by the trial court made during the parties' closing argument relative to what the photographs depict.  *See* Commonwealth's Brief at 11, 13-14; Q.C.'s Brief at 12-13.  As the photographs are not themselves evidence, we deem these musings by the trial court to be irrelevant, as they constitute neither findings of fact nor evidence in this case.

Q.    And is this one of the still shots that you turned over to the police?

A.    Yes.

Q.    That was letter (A).   What about letters (B) and (C)?

A.    Yeah.

Q.    Those are from your system?

A.    Yes.

Q.    And does your system date and time stamp video and photographs?

A.    Yes.

Q.    And to your knowledge is that accurate?

A.    Yes.

…

THE COURT:      Did you look at this video yourself, where [sic] you able to run it, and look at it?

THE WITNESS:   Yeah.

THE COURT:      Okay, was there any problem with seeing the video?

THE WITNESS:   It was like dark, it was a little dark.  I mean you –

…

THE COURT:      … You looked at the video, you were able to see it even though it was dark, or no?  Was it too dark to see anything on it?

THE WITNESS:     You could see people moving around but like –

THE COURT:     You couldn't identify anybody.

THE WITNESS:     **Right**, but you could see –

THE COURT:     -- and you turned it over to the police.

THE WITNESS:     Yes.

THE COURT:     But the stills you can identify a person, you can see a face? …

THE WITNESS:     **No, not really**.

THE COURT:     …   Do you think the still photos are easier to see than the video that you saw?

THE WITNESS:     Me, personally, I think it would be on the same order.

N.T., 6/18/14, at 22-25 (emphasis added).

From the above, it is clear that the Commonwealth never elicited any testimony that the photographs depicted or purported to depict Q.C.   In response to the trial court's question, Bland specifically stated that he could not identify anyone from the video or the still shots.  Therefore, we conclude the Commonwealth's assertion that the photographs in this case provide corroboration of the fingerprint evidence in identifying Q.C. as a participant in the burglary is disingenuous at best.

Our close review of the entire record leads us to agree with Q.C. that the only evidence linking him to the subject burglary is the partial handprint

and fingerprint found on the exterior driver-side window of one of the damaged vehicles. It is undisputed that the premises, upon which the vehicle was situated, was open to the public during regular business hours. Absent further evidence of the attendant circumstances tending to bolster an inference that the prints could only have been made during the burglary, we conclude *Cichy* and its progeny apply. We therefore conclude the evidence in this case was insufficient to prove Q.C. committed the subject burglary and conspiracy. Accordingly, we reverse the juvenile court's June 18, 2014 adjudication of delinquency and its July 8, 2014 order of disposition.

Orders reversed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/7/2015