**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Monroe PETTYJOHN, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 14, 2013.

Filed March 11, 2013.

Karl Baker, Public Defender, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., GANTMAN, J., and LAZARUS, J.

OPINION BY STEVENS, P.J.

This is an appeal from the judgments of sentence entered by the Court of Common Pleas of Philadelphia County on three separate dockets after the trial court convicted Appellant Monroe Pettyjohn of three counts of burglary [1] and one count each of possession of an instrument of crime,[2] criminal mischief,[3] criminal trespass,[4] and theft by unlawful taking.[5]    Appellant claims there was insufficient evidence to support two of his burglary convictions and the related crimes.   We affirm.

Appellant was charged in connection with three separate burglaries that took place in northwest Philadelphia.   After the three cases were consolidated, Appellant waived his right to a jury trial.   On May 24, 2011, a bench trial was held at which the following factual history was developed.   On May 25, 2010, at approximately 3:00 a.m., the burglary alarm of a commercial building located at 5031 Germantown Avenue in Philadelphia was activated. The alarm company notified Jae Im, the owner of the deli located on the first floor of the building, who noticed that the door to the building was open and the lock was broken.   As Philadelphia police officers approached the scene, they noticed Appellant walking away from the deli.   When the officers stopped Appellant, they noticed he was holding a crowbar, a screwdriver, and a roll of mesh.   The officers proceeded to the building and observed fresh scratches on the strikeplate of the doorknob, which were consistent with the pry marks of a crowbar.   Mr. Im told police the wire mesh recovered from Appellant was part of the building material being used to renovate the upper floor of the building. Upon his arrest, Appellant gave the officers a false name.

Nearly three weeks later, on June 10, 2010, a burglar alarm was activated at the residence located at 155 West Walnut Lane at 6:15 p.m. The alarm company immediately informed one of the owners, Laura Lewis, who was able to return home within ten minutes of the notification. When she arrived, Mrs. Lewis was greeted

1.   18 Pa.C.S.A. § 3502(a).

2.   18 Pa.C.S.A. § 907.

3.   18 Pa.C.S.A. § 3304(a)(2).

4.   18 Pa.C.S.A. § 3503(a)(1)(ii).

5.   18 Pa.C.S.A. § 3921.

by several police officers who had been dispatched to the alarm. Mrs. Lewis discovered that her front double doors had been kicked in and destroyed. She also observed that several of her DVDs had been thrown in a flowerpot on the front porch. Mrs. Lewis testified that when she had left the house that morning at 9:00 a.m., her front doors were intact and the DVDs were upstairs. Philadelphia Police Officer Robert Jala dusted these DVDs for fingerprints. After the fingerprints were analyzed, the police concluded that one of the fingerprints discovered on the DVDs belonged to Appellant.

The third burglary occurred on June 29, 2010 at the home of Kenneth Handrich which is located at 23 West Walnut Lane in Philadelphia. When Mr. Handrich arrived home at 12:00 p.m., he discovered that someone had broken into the back of his home by smashing the glass out of the double French doors on his back patio and had stolen his laptop computer, which he valued at approximately $800.00. Mr. Handrich testified that his back patio is a "guarded wooded area." N.T. Trial, 5/24/11, at 12. Once the police arrived to investigate, they dusted for fingerprints and found one of Appellant's fingerprints on the back door of Mr. Handrich's home. At trial, Mr. Handrich testified that he recognized Appellant as a man who tried to sell him tools on the sidewalk near Mr. Handrich's home on two occasions before his home was burglarized.

On May 24, 2011, the trial court convicted Appellant of the aforementioned charges. On July 14, 2011, the trial court sentenced Appellant to an aggregate sentence of eight to sixteen years imprisonment to be followed by seven years of probation. Appellant filed this timely appeal. The trial court did not order Appellant to file a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b).

On appeal, Appellant challenges the sufficiency of the evidence supporting two of his burglary convictions. Appellant concedes his guilt in the burglary of the commercial building located at 5031 Germantown Avenue in Philadelphia, but contends that he was unjustly convicted of the burglaries of the two private residences. Specifically, Appellant claims that the fingerprint evidence found at the homes was insufficient to establish his identity as the burglar of the two homes.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

As a general matter, our standard of review of sufficiency claims requires that we evaluate the record "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751 (2000). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." *Commonwealth v. Brewer*, 876 A.2d 1029, 1032 (Pa.Super.2005). Nevertheless, "the Commonwealth need not establish guilt to a mathematical certainty." *Id.; see also Commonwealth v. Aguado*, 760 A.2d 1181, 1185 (Pa.Super.2000) ("[T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence"). Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. *See Com-*

monwealth v. DiStefano, 782 A.2d 574, 582 (Pa.Super.2001).

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. See Brewer, 876 A.2d at 1032. Accordingly, "[t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence." Id. (quoting Commonwealth v. Murphy, 795 A.2d 1025, 1038–39 (Pa.Super.2002)). Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld. See Brewer, 876 A.2d at 1032.

Commonwealth v. Pedota, 2013 WL 618790, at *1–2 (Pa.Super.2013) (quoting Commonwealth v. Lamonda, 52 A.3d 365, 368 (Pa.Super.2012)).

In a recent decision, Commonwealth v. Donohue, 62 A.3d 1033, 1035–37 (Pa.Super.2013), this Court upheld a defendant's burglary conviction when the Commonwealth presented evidence that the defendant's fingerprints were found on an opened soda bottle found in the burglarized residence. The owner of the home testified that the soda bottle was unopened in a cabinet when she left the home the night before. Further, the owner asserted that she never gave the defendant permission to be in her home. Upon affirming the defendant's judgment of sentence, this Court thoroughly discussed our past decisions which analyzed whether fingerprint evidence constitutes sufficient proof to sustain a conviction:

In the seminal decision of Commonwealth v. Cichy [227 Pa.Super. 480], 323 A.2d 817, 818 (Pa.Super.1974), we observed that "the accuracy of fingerprint evidence for purposes of identification" is established and that "the probative value of that evidence depends entirely on the circumstances of each case. Unless those circumstances are such that the fingerprint could only have been impressed at the time and place the crime was committed, such evidence is insufficient to sustain a conviction." On the other hand, where "circumstances indicate impression at [the time of the crime], and the defendant's innocent presence is excluded, such evidence has been held sufficient to convict." Id. at 819.

Under these precepts, a conviction will be upheld "where fresh fingerprints are found at the place of illegal entry to private burglarized premises where a defendant's presence is unexplained." Id. at 818. Similarly, if the prints are discovered in a place accessible only by force or on objects that the defendant could not have contacted under legitimate circumstances, a conviction will be upheld. Id. However, "the mere discovery of prints in a public place with which a number of people may have had innocent contact is insufficient by itself to convict." Id. Additionally, if the prints are located on a readily movable object in common usage and the possibility of innocent contact with that object is great, the conviction will not be sustained. Id.

A comparison of the fingerprint cases established the uniform application of these principles. In Cichy, the defendant was convicted solely based on the fact that his fingerprints were discovered on a cigarette pack located next to a vending machine in a public venue that was burglarized. We ruled that the con-

viction was infirm, given that the defendant admittedly had visited the scene of the burglary during normal business hours before the date of the burglary, no prints were discovered on the cigarette machine, and there was no indication that the cigarette package with the defendant's prints was taken from the machine. Thus, in *Cichy*, there was an innocent explanation for the presence of the prints on the package, which could have been left behind when the defendant was on the premises during business hours. We concluded that the discovery of prints on a movable object in a public venue is insufficient to establish a person's presence at the crime scene during the commission of the crime.

In the case of *In re M.J.H.*, 988 A.2d 694 (Pa.Super.2010), we applied *Cichy* and reversed an adjudication of delinquency that was premised upon the juvenile's commission of acts constituting burglary and theft. In that case, a clothing store was ransacked and burglarized, and the juvenile's fingerprints were discovered on a clothing rack readily accessible to the public, but not at or near the point of illegal entry into the store. Additionally, evidence was presented that, on two or three occasions before the burglary, the juvenile was present in the store during normal operating hours.

We observed that the juvenile's fingerprints were discovered at a location where his presence was explained through innocent behavior and from an object with which he could have had legitimate contact. We concluded that the possibility that the juvenile had made innocent contact with the clothing rack was too great to permit a determination that he was the person who ransacked and burglarized the store. *See also Commonwealth v. Henry*, 875 A.2d 302 (Pa.Super.2005) (defendant improperly convicted of unauthorized use of a vehicle where lone evidence against him was that his fingerprints were found on movable object inside vehicle; such proof established only that the defendant had been present in vehicle at some point and was not sufficient to establish that he used the car without permission).

Conversely, in numerous cases, we have upheld the sufficiency of the evidence supporting a conviction premised solely on the fact that the defendant's fingerprints were at the scene of the crime. Pursuant to these decisions, imprints constitute sufficient evidence so long as the facts of the crime eliminate an innocent explanation for the presence of the defendant's fingerprints on an object. In *Commonwealth v. Price* [278 Pa.Super. 255], 420 A.2d 527 (Pa.Super.1980), a case highly similar to that herein, we upheld a conviction of burglary. The defendant was convicted of burglarizing a private residence, and the lone evidence linking him to that crime was the fact that, after the burglary, his fingerprints were discovered on a television located in the burglarized premises near the point of entry. Similar to the case herein, the homeowners left their house at 6:00 p.m., locked it, and closed the window, and when they returned six hours later, items were stolen. There were no fingerprints at the point of entry, an opened window, but the defendant's fingerprints were found on a nearby television. The homeowners testified that they did not know the defendant and that he did not have permission to enter their abode. There being no plausible innocent explanation for the defendant's imprints, we ruled that the evidence was sufficient to sustain the conviction.

The facts examined in *Commonwealth v. Wilson* [258 Pa.Super. 231], 392 A.2d 769 (Pa.Super.1978), are also analogous to those in the present case. In *Wilson*, the defendant and a cohort burglarized a private house and terrorized its occupants, who did not know defendant. The defendant's identification as a perpetrator was premised on the fact that his fingerprints were found in the home. The defendant challenged the sufficiency of the evidence supporting various convictions arising from the incident, and he claimed that "lacking eyewitness identification evidence or other circumstantial evidence, fingerprint evidence alone is not sufficient to convict him." *Id.* at 771.

We disagreed with his sufficiency challenge because there was "simply no logical explanation for finding [defendant's] fingerprints on the lamp and closet in the ... residence, except that he inadvertently placed them there while burglarizing the ... home and terrorizing its occupants." *Id; see also Commonwealth v. Marrero,* 914 A.2d 870 (Pa.Super.2006) (fingerprints were located on interior hood of stolen car and engine was removed; location of prints was not susceptible to a reasonable inference of innocent contact and conviction was upheld); *Commonwealth v. Hunter* [234 Pa.Super. 267], 338 A.2d 623 (Pa.Super.1975) (defendant's fingerprints were located at point of entry to burglarized business and not in a public area where defendant would have had a legitimate right of access; burglary conviction upheld).

Herein, there was no innocent explanation for the presence of Appellant's fingerprints on the soda bottle located at the crime scene. The burglarized premises were a private residence, and Appellant, unknown to the owner, had no right to be located there. The proof also established that the impression on the soda bottle, even though movable, was made during the burglary. The bottle was in a kitchen cabinet and unopened at 6:00 p.m. on June 20, 2010, when the owner locked the door and closed the windows to her property. The item was found in the basement, opened, and partially consumed sixteen hours later. The burglary occurred during those hours. When discovered on June 21, 2010, the bottle had two imprints, a thumb and forefinger, which were identified as those of Appellant. *Donohue,* 62 A.3d at 1033–38.

Based on this precedent and our review of the circumstances in this case in the light most favorable to the Commonwealth as the verdict winner, we find Appellant's convictions were supported by sufficient evidence. In the burglary of the Lewis home located at 155 West Walnut Lane, police found the burglar gained access to the private residence by kicking in the front doors, which Mrs. Lewis described as 150–year–old mahogany doors. Near the broken front doors, the police found several of Mrs. Lewis's DVDs in a flowerpot on the front porch. Mrs. Lewis asserted the DVDs were on the second floor of her home when she locked her home that morning. As police arrived within ten minutes of the activation of the home's burglary alarm and Appellant's fingerprint was found on a DVD which had been removed from the home and haphazardly thrown in a flowerpot near the burglar's illegal entry to the home, we find it was reasonable for the trial court to conclude that the fingerprint was placed on the DVD during the burglary. Moreover, there was no innocent explanation for Appellant's access to the home as Mrs. Lewis asserted that she did not know Appellant and did not give him permission to enter her home.

In the same manner, the trial court properly found that the Commonwealth presented sufficient evidence to convict Appellant of the burglary at the Handrich home which is located at 23 West Walnut Lane in Philadelphia. Mr. Handrich discovered that a burglar had gained entry to his home by smashing the glass out of Mr. Handrich's back patio doors. Mr. Handrich described the back of his private residence as a "guarded wooded area." N.T. Trial, 5/24/11, at 12.

We find no merit to Appellant's contention that there was a "completely innocuous" reason why his fingerprint was on the back door of Mr. Handrich's home as Appellant admitted selling items in this neighborhood. Although Mr. Handrich recognized Appellant as a man who had tried to sell him tools on the sidewalk in his neighborhood on two occasions before the burglary, Mr. Handrich asserted that he never gave Appellant permission to enter his home or to go into his backyard. We find it reasonable for the trial court to reject Appellant's explanation as innocent as Appellant's fingerprint was found at the point of the burglar's illegal entry, the back door of Mr. Handrich's private residence in a guarded wooded area. This location was not a public area where Appellant had a legitimate right of access.

Accordingly, we conclude the trial court did not err in finding there was sufficient evidence to identify Appellant was the perpetrator of the burglaries of the two private residences.

Judgment of sentence affirmed.