J.S45038/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
:
:
DEVON JORDON, :
:
Appellant : No. 2386 EDA 2013

Appeal from the Judgment of Sentence August 9, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division No(s).: CP-51-CR-0002767-2013

BEFORE: BOWES, WECHT, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.: **FILED OCTOBER 08, 2014**

Appellant, Devon Jordon, appeals from the judgment of sentence

entered in the Philadelphia County Court of Common Pleas following a waiver

trial and his convictions for burglary, criminal trespass, theft by unlawful

taking, and receiving stolen property.[1] Appellant contends the evidence was

insufficient to find him guilty based solely upon a single palm print found at

the scene of the crime. We affirm.

The victim in this case, Carol Butter, did not know Appellant and had

never seen him before. N.T. Trial, 6/12/13, at 13. At the non-jury trial, she

testified that when she left the house on October 17, 2012, she left her front

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3502(a), 3503(a)(1)(i), 3921(a), 3925(a).

door closed but unlocked. *Id.* at 12. The facts of this case, as summarized

by the trial court, are as follows:

> On October 17, 2012, at approximately 2 p.m., [Butter] arrived at her home . . . with her grandchildren. She noticed Appellant [ ] standing in between the storm door and the front door of her home. **Both doors were open**. Appellant told Butter that he was just knocking on her door to ask if he could use her wifi to access the Internet on his cell phone. Appellant asked for permission to sit on her porch and use the wifi. Butter hurried inside her home with her grandchildren and told Appellant he could use the wifi on her porch. Appellant sat on Butter's bench, near the railing of the porch, for approximately twenty minutes before leaving.
>
> On October 18, 2012, around 2 a.m., the police responded to a 9-1-1 call reporting a possible burglary at Butter's home. Police told Butter, who had slept through the incident, that her front window and back door were open. **Police told Butter that the assailant entered the home through the front window**. Butter told police that her flat screen TV, Wii game system and Wii games, Comcast box, computer, kitchen knives, music stand, a wallet, DVD's, small DVD player, and radio were missing. Police recovered a large duffle bag and a child's book bag from the street. The large bag which [sic] contained the stolen items. Detective Robert Schill checked Butter's home for fingerprints. Detective Schill was able to lift a total of seven prints. Prints 1-4 came from the front glass window and prints 5-7 came from the computer, DVD player, and radio. Appellant's bottom right palm, print 4, was present on the front glass window.
>
> On January 16, 2013, Butter was asked to come to North East Detectives station to try to identify the man she saw on her porch on October 17, 2012. Butter identified Appellant out of a photo array.

Trial Ct. Op., 12/11/13, at 1-2 (emphasis added).

At trial, a friend of Butter's daughter, Alan Serge, testified that he was

sleeping at Butter's home on the evening of October 17, 2012. N.T. at 34.

He testified, *inter alia*, as follows:

[Commonwealth]: . . . Did anything cause you to wake up during the early morning hours of October 18th of 2012?

A: Yes, the police woke us all up saying that there was a break-in.

\* \* \*

They came in the house and they—actually, the house is three stories. They came up to the second story, woke up [Butter], and then everybody else, woke us all up. They said how many floors is this? We said three floors and they said there was a break-in so we all had to come downstairs.

\* \* \*

Q: Did you see the mode of entry used by the perpetrator?

A: Yes.

Q: Where was it?

A: **It was the first window right after the door.**

\* \* \*

Q: When you went to sleep, what was the condition of the first floor living room windows [sic] that's right off the porch area?

A: The one didn't lock. So is that what you're talking about?

Q: Yes.

A: The one window, I put a piece of PVC pipe in there to try to lock it.

\* \* \*

> Because [Butter] was nervous about someone being on the porch during that day so we locked all the windows but that one wouldn't lock in general.
>
>         *    *    *
>
> Q: . . . When you came down in response to the police officers telling you there had been a break-in, did you notice the windows, anything different about the windows?
>
>         *    *    *
>
> A: The window was just open.  The pipe didn't work.
>
>         *    *    *
>
> Q: . . . As a result of this incident, did you have anything taken, any of your personal belongings?
>
>         *    *    *
>
> A: My wallet.

*Id.* at 34, 35-36, 38-39 (emphasis added).

The Commonwealth and defense counsel stipulated that if Officer Rice,[2] the first responding officer, were called to testify, she would state as follows:

> [O]n October 18th of 2012 at approximately 2:02 a.m., she responded to the [Butter] property . . . .  Response was for radio call of a burglary.
>
> She was met by a neighbor.  The neighbor is identified by name, date of birth, address in [her report].  The neighbor called the police after noticing the front window to the property was open.  Police did knock on the doors with negative response.

---

[2] Our review of the record did not reveal Officer Rice's first name.

> . . . [S]he would testify that within 30 minutes of being there, this large case was presented to her, that from being found outside on the street and it contained the aforementioned stolen items, the computer, the computer tower and . . . the computer keyboard.
>
> And also the [sic] Officer Rice would testify that during this same period, a child's backpack was recovered outside and brought in her presence to [ ] Butter and opened and that that also had the radio and speakers to the radio which were inside the property when everybody went to bed on October 17th of 2012 and now outside the property on October 18, 2012.
>
> Nothing else was brought or confiscated or recovered outside in this officer's presence . . . .

*Id.* at 48-49.

Appellant did not testify, and the sole evidence he presented was fingerprint testing results which showed that six fingerprints found were not a match to his. *Id.* at 59.

The trial court found Appellant guilty of one count each of burglary and criminal trespass, and two counts each of theft by unlawful taking and receiving stolen property. On August 9, 2013, the court imposed a sentence of eleven and one-half to twenty-three months' incarceration, plus five years' reporting probation for burglary. It assessed no further penalty for the additional charges. This timely appeal followed.[3] Appellant filed a court-

---

[3] Appellant did not file a post-sentence motion. However, a sufficiency of the evidence claim can be raised for the first time on appeal. *Commonwealth v. Coleman*, 19 A.3d 1111, 1118 (Pa. Super. 2011); Pa.R.Crim.P. 606(A)(7).

ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal[4] and the trial court filed a responsive opinion.

Appellant raises the following issue for our review:

> Was not the evidence insufficient to find Appellant guilty of burglary and related charges beyond a reasonable doubt where the evidence of a single palm print at the scene of the crime did not prove that he entered the property with the intent to commit a theft, that he stole anything, or that he was in possession of stolen property?

Appellant's Brief at 4. He argues[5]

> [t]he **sole evidence linking [him] to the scene of the burglary was one palm print recovered from the outside glass of a window on the complainant's porch**, where Appellant had been given permission to be present the previous day. The Commonwealth failed to present evidence that Appellant's palm print, or any fingerprints attributable to him, were present inside the house or on items from the house found outside after the burglary.

*Id.* at 11 (emphasis added). We find no relief is due.

Our standard of review of a sufficiency of the evidence challenge is to

> determine if the Commonwealth established beyond
> a reasonable doubt each of the elements of the

_____

[4] We note that the trial court granted Appellant's request for an extension of time within which to file his Rule 1925(b) statement.

[5] Although Appellant avers the evidence was insufficient to prove "he entered the property with the intent to commit a theft, that he stole anything, or that he was in possession of stolen property," Appellant's Brief at 11, he fails to set forth the definitions of his offenses. The argument section of an appellate brief must include "discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). Nevertheless, we decline to find waiver.

offense, considering all the evidence admitted at trial, and drawing all reasonable inferences therefrom in favor of the Commonwealth as the verdict-winner. The trier of fact bears the responsibility of assessing the credibility of the witnesses and weighing the evidence presented. In doing so, the trier of fact is free to believe all, part, or none of the evidence.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence, and we must evaluate the entire trial record and consider all evidence received against the defendant.

*Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa. Super. 2012) (citation omitted), *appeal denied*, 63 A.3d 1243 (Pa. 2013).

Appellant was convicted under the prior burglary statute:[6]

> **(a) Offense defined.**—A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter.

*See* 18 Pa.C.S. § 3502(a).

Appellant was also convicted under the following subsection of the

---

[6] We note that after Appellant was convicted, Section 3502(a) was amended, effective February 21, 2014, and now provides in pertinent part:

> **(a) Offense defined.**—A person commits the offense of burglary if, with the intent to commit a crime therein, the person:
>
> (1) enters a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense any person is present . . . .

*See* 18 Pa.C.S. § 3502(a)(1).

criminal trespass statute: "A person commits an offense if, knowing that he is not licensed or privileged to do so, he . . . enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof[.]" *See* 18 Pa.C.S. § 3503(a)(1)(i). Theft by unlawful taking is defined as follows: "A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S. § 3921(a). Finally, receiving stolen property is defined as: "A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa.C.S. § 3925(a).

In *Commonwealth v. Hunter*, 338 A.2d 623 (Pa. Super. 1975), a burglary occurred in an electronics plant. *Id.* at 624. A piece of sheet metal had previously been placed on a broken window in the plant. *Id.* An employee discovered that the sheet metal was removed. *Id.* The detective later concluded that the broken window "was the method used to gain entry to the building." *Id.* The detective "lifted several fingerprints from the premises, including one from the sheet metal," and "determined that only one of the prints was identifiable[;]" a fingerprint from the sheet metal matched the defendant. *Id.*

The defendant argued that the evidence was insufficient to convict him

of burglary. *Id.* at 625. He contended that "it [was] just as reasonable to conclude the fingerprint was impressed on the visit 'a couple of weeks' prior to the burglary on his brief visit seeking employment." *Id.* This Court disagreed and opined:

> [T]he [defendant's] fingerprint was **found at the place of illegal entry** to the burglarized premises, was not in a public place where [the defendant] may have had legitimate innocent contact, was not in a readily accessible place for legitimate innocent contact, was not on an object that was readily movable and in common usage and was impressed at or about the time of the crime.
>
> Under these circumstances **the Commonwealth's case is more than the fingerprint**; it is a chain of circumstantial evidence that is more than suspicion or conjecture. The evidence is sufficient to sustain the [defendant's] conviction.

*Id.* at 625 (emphases added), cited with approval in *Commonwealth v. Pettyjohn*, 64 A.3d 1072, 1077 (Pa. Super. 2013); *Commonwealth v. Donohue*, 62 A.3d 1033, 1037 (Pa. Super. 2013), *appeal denied*, 74 A.3d 125 (Pa. 2013).

In the case *sub judice*, the trial court opined:

> [T]he fact that Appellant's prints were not found on the stolen items does not mean that the evidence is insufficient to convict him of burglary. Appellant was discovered on Butter's porch, standing in between her storm door and her front door, with the front door open. The following morning, Butter's home was burglarized and police discovered that the burglar entered the home during the night when its occupants were sleeping. The point of entry was through the front glass window located on the porch. Appellant's bottom right palm print was found on the front glass window. The fact that Appellant was on Butter's property the day before the burglary and had

opened her door without permission is indicative of intent to break into the home and commit a crime therein. Appellant's palm print was found on the same window that served as the entry point for the burglar. The fact that Appellant's fingerprints were not found on the stolen items does not mean that Appellant did not break into Butter's home.

The credibility and weight of the witnesses' testimony is for the finder of fact to determine. Viewed in the light most favorable to the Commonwealth as verdict winner, the evidence presented at trial was sufficient to support the verdict of guilty of burglary in the first degree . . . .

Trial Ct. Op. at 4-5. We agree.

In the case *sub judice* the Commonwealth has presented more evidence than a mere palm print. ***See Hunter***, 338 A.2d at 625. The Commonwealth showed that earlier in the day of the burglary, Appellant was on Butter's porch, between the screen door and front door, both of which were open. Butter testified that when she left her house that day, the doors were closed, albeit unlocked. Appellant sat on her porch for twenty minutes before leaving. Meanwhile, Butter's porch window did not lock. The police determined that the assailant entered through the front window, and Appellant's palm print was found on this window. We do not disturb the finding of the trial court, who sat as finder of fact, that the Commonwealth established "a chain of circumstantial evidence that is more than suspicion or conjecture." ***See Hunter***, 338 A.2d at 625. We discern no abuse of discretion by the trial court. ***See Brown***, 48 A.3d at 430.

Judgment of sentence affirmed.

J. S45038/14

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/8/2014