J-A29017-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RAYMONT LEE BURGESS, | |
| Appellant | No. 1409 WDA 2014 |

Appeal from the Judgment of Sentence February 11, 2014
In the Court of Common Pleas of Allegheny  County
Criminal Division at No(s): CP-02-CR-0007950-2013

BEFORE:  FORD ELLIOTT, P.J.E., BOWES AND MUSMANNO, JJ.

MEMORANDUM BY BOWES, J.:                 **FILED JANUARY 22, 2016**

Raymont Lee Burgess appeals from the judgment of sentence of five to ten years incarceration followed by five years probation entered after he was found guilty at a nonjury trial of person not to possess a firearm and possession of an offensive weapon.  For the reasons set forth herein, we affirm.

Appellant was arrested at the residence of Chuckia Herring, a former paramour and mother of his two children, both of whom were home at the time.  Appellant, a fugitive, had been living at a halfway house and running from police following a parole violation at least three months prior.  He testified that he asked Herring to stay the night at her apartment so that he may spend time with his children, and she obliged.

The facts that gave rise to Appellant's arrest were recounted as follows by the trial court:

> On May 31, 2013, the United States Marshall's Fugitive Task Force, attempted to effectuate an arrest warrant for Burgess, who was a parole violator and fugitive. Based upon information that the Marshall's Office had received about Burgess it was believed that he was staying with Chuckia Herring, (hereinafter referred to as "Herring"), and their children, ages two and one, at her apartment located on Sandusky Court. Pennsylvania State Trooper Matthew Roth was assigned to the Fugitive Task Force and he, along with six other members of his team, went to Herring's apartment in the hopes of apprehending Burgess. At approximately 7:30 in the morning, Trooper Roth knocked on the door, announced that they were the police and that they had an arrest warrant for Burgess. There was no response to the initial knocking, however, they could hear movement in the apartment. They repeatedly knocked on the door and finally when there was no response to their knocking on the door, despite the fact that people were inside the apartment, they advised those individuals that they were going to breach the door.
>
> The door was breached and Trooper Roth immediately ran into a couch that had been pushed in front of the door, as was a television set. Trooper Roth encountered Herring who was standing in front of him wrapped in a towel and holding a small child. He attempted to get around her and she attempted to get in his way. He finally got around her and proceeded to one of the two bedrooms in this apartment. When he entered the room, he noticed that a second child was asleep on a mattress on the floor. He proceeded to look through the rest of the bedroom and noticed a closet where a pile of clothes was on the floor. In going through the clothes, Trooper Roth found a silver semi-automatic Fie thirty-two-caliber pistol that was fully loaded. Trooper Roth announced to his team members that he had found a loaded [handgun] and then cleared the [firearm] to insure the safety of the minor child who was in that room. Other members of the Marshall's Task Force went into the second bedroom and found Burgess who was hiding in a plastic tub underneath a pile of clothes and with the lid on it. When Burgess had been arrested and taken into custody, he said that the gun did not work, that the slide was locked.

Appellant, Herring, and Trooper Roth each testified at the joint trial of Appellant and Herring. Especially relevant to the trial court's determination of Appellant's guilt and to our instant disposition is the following exchange between Appellant and his counsel on direct examination:

Counsel: Were you aware of a gun in one of the bedrooms, sir?

Appellant: No, sir.

Counsel: Had you discussed the gun with Miss Herring at all?

Appellant: I think she told me when I was in jail in 2011 that she purchased a gun, but we never really talked about it.

Counsel: Okay. When you got there that day, did you ever go into the room specifically where the gun was found at?

Appellant: Sir, I laid the child in the bed and went to sleep on the couch.

N.T., 2/11/14, at 43.

When Herring was asked whether she told Appellant she owned a gun, she explained: "I don't remember telling him about the gun. I believe I might have said I wanted one when he was in jail in 2011, but I don't remember if I told him that I actually got a gun." *Id*. at 61. The firearm, which was unlawfully obtained, was given to her by a friend after nearby break-ins left her fearful for her safety and that of her children. She later testified that she "didn't tell him about the gun" and that she didn't know how he would know about it. *Id*. at 60. Herring testified consistently and

- 3 -

unequivocally that the firearm was kept in a box on the top shelf of a cabinet in her room and that she never moved it. *Id*. at 61 ("It was always in a box. I had no reason to take it out. It was in a box on the shelf for years."); *id*. at 63 ("[The gun] hadn't been moved since it had been put in there."); *id*. at 64 (stating that "[t]he gun was always up there in a box," that she "never had a reason to take it out," and agreeing that, if somebody else took the gun out of the box before the arrest, it was not her). Herring was not asked for and did not offer testimony about whether any individual other than herself, Appellant, and her two children, then one and two years old, had access to her apartment and, accordingly, to her firearm.

The trial court found Appellant guilty, sentenced him as stated above, and denied his timely post-trial motion seeking relief. Appellant timely appealed, and the trial court ordered him to file and serve a 1925(b) concise statement of errors complained of on appeal. Following several requests for extensions, Appellant complied with the trial court's order. The trial court then authored its 1925(a) opinion. This appeal is now ready for our consideration.

Appellant levels two questions:

I.   Was the evidence sufficient to establish that Mr. Burgess had actual or constructive possession of the gun found in Herring's bedroom closet?

II.  Were the verdicts of guilty against the weight of the evidence because the trial court relied on a fact not in evidence, misinterpreted another fact, and ignored overwhelming evidence that Mr. Burgess did not possess the gun?

- 4 -

Appellant's brief at 5.

At his first issue, Appellant alleges that the evidence was insufficient to convict him of person not to possess a firearm and possession of an offensive weapon because the Commonwealth failed to show that Appellant had constructive possession of Herring's firearm. Specifically, Appellant relies on the dearth of testimony regarding his knowledge of Herring's possession of the firearm and, perhaps more importantly, the location of that firearm in her apartment. He argues that the fact that he inaccurately told the officers that the firearm was nonfunctional proved that he was unaware of its condition and suggested that he made that comment out of fear and without actual knowledge of the gun's functionality. As Herring testified that she never told Appellant where the firearm was located and that she did not tell Appellant that she ever possessed one, Appellant maintains the evidence is insufficient to show that he possessed the firearm for the purposes of the statute. Accordingly, Appellant argues that the evidence presented at trial was insufficient to convict him of the firearm-related offenses.

The Commonwealth, on the other hand, relies on the inferences drawn from the following testimony: Appellant had access to and actually entered Herring's bedroom; Herring never moved the gun from the box in the closet; the firearm was found in a location other than that location; and

Appellant had time to hide the gun in the pile of clothes in between the officers' initial knock and their entrance. Nothing, the Commonwealth notes, impeded Appellant from finding and possessing Herring's firearm. While it acknowledges that Appellant gave an inaccurate representation of the firearm's operability, it also posits that an individual inexperienced in handling firearms could easily make such a mistake.

We are guided by a well-settled standard of review when called to examine sufficiency claims. We will "evaluate the record in a light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Commonwealth v. Pettyjohn*, 64 A.3d 1072, 1074 (Pa.Super. 2013). Though the Commonwealth may establish guilt by circumstantial evidence alone, "[e]vidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused beyond a reasonable doubt." *Id*. Circumstantial evidence, when coupled with the reasonable inferences to which the Commonwealth is entitled, "overcomes the presumption of innocence." *Id*. at 1075.

Appellant herein does not challenge that he is, in fact, a person not permitted to possess a firearm. *See* 18 Pa.C.S. § 6105(b). As Appellant was not in actual possession of the firearm at the time of his arrest, the

Commonwealth was required to prove that he was in constructive possession of it in order to support his convictions. We have recognized:

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa.Super. 2013) (citation omitted). At issue in Appellant's sufficiency claim is whether he constructively possessed the firearm. We find that the evidence presented at trial was sufficient to support the trial court's determination that he constructively possessed the firearm.

Appellant, a fugitive at the time of the arrest, arrived at Herring's apartment at 2:30 a.m. He entered Herring's bedroom, where Officer Roth eventually found the firearm, that night to put one of the children to sleep. Herring testified consistently and ardently that the gun was located in a box at the top of her bedroom closet and she had not moved the gun since it was given to her years ago. She did not once testify that any person other than Appellant had access to her apartment, room, or firearm. The firearm was eventually recovered in Herring's bedroom, although in a different location from the only place Herring had kept it and knew it to be. Appellant, spontaneously and unprompted, then acknowledged to officers

that he had knowledge, though eventually shown to be false, of the firearm's condition.

By placing himself in the room where the firearm was recovered, N.T. 2/11/14, at 43, Appellant concedes that he had access to the firearm. Herring's unequivocal assertion that she had never moved and had no reason to ever move the gun from her closet, *id*. at 60, testimony that was credited by the trial court, permitted the reasonable inference that Appellant had intent to and did exercise that control by moving it from its location. Under our standard of review, the Commonwealth is entitled to the reasonable inference that it was Appellant who moved the gun, especially in light of the fact that the only others present in the apartment were one- and two-year-old children.

It matters not that Appellant's voluntary statement that the firearm was inoperable was incorrect. Although Appellant asserts that the statement's falsity implies that he did not actually handle the weapon, the competing inference was credited by the trial court. We will not reweigh the evidence. Thus, we reject his sufficiency challenge and find that the trial court had sufficient evidence to find beyond a reasonable doubt that Appellant constructively possessed the firearm.

Appellant next asserts that his convictions were against the weight of the evidence presented at trial. Specifically, he asserts that the trial court "got one fact wrong, misapplied another, and used these errors as the

basis" for sustaining Appellant's convictions. Appellant's brief at 29. In its opinion, the trial court twice wrote that Herring told Appellant that the gun was in the shoebox in her apartment and characterized Appellant's misstatement about the firearm's operability as evidence that he handled it. Relying on these facts and misinterpretations of testimony, Appellant's argues that the trial court's findings were against the weight of the evidence.

The Commonwealth rebuts that the trial court did not, and did not need to, rely on any misstated fact in reaching its conclusion. Instead, the Commonwealth points to the trial court's opinion, wherein it states:

> [I]t is clear that the verdicts are not against the weight of the evidence so as to shock one's conscious [*sic*] as Burgess knew of the gun, he knew of the condition of the gun and it had been removed from the location that Herring maintained that she had placed the gun and never moved it.

Commonwealth brief at 24 (citing Trial Court Opinion, 6/3/15, at 7). Thus, while the trial court misstated the fact that Appellant was told of the location of the gun, the Commonwealth argues that it did not need that fact to find that Appellant constructively possessed the firearm. It likewise refutes Appellant's arguments regarding the erroneous statement of the firearm's operability and that the Commonwealth failed to provide certain inculpatory evidence by noting this Court's standard of review, which prohibits us from reweighing the evidence presented at trial. We agree with

the Commonwealth and find that the trial court did not abuse its discretion with respect to Appellant's weight claim.

We have long recognized that our review a weight of the evidence challenge is one of the trial court's exercise of discretion, "not of the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Giordano*, 121 A.3d 998, 1007 (Pa.Super. 2015). As the trial court has intimate knowledge of a given matter, we "will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence." *Id*.

We first credit Appellant's assertion that the trial court misstated Herring's acknowledgement that she told Appellant the location of the firearm. The trial court wrote in its Pa.R.A.P. 1925(a) opinion that Herring testified that she "advised Burgess that she had the gun and that it was in a shoebox in her apartment." Trial Court Opinion, 6/3/15, at 4. Herring, in fact, testified that she "might have said that [she] wanted one when [Appellant] was in jail in 2011," but she doesn't remember if she told him she actually had one. *Id.* at 61. She also testified that she recalled no specific conversation about the firearm. *Id*. at 62. She did **not** testify that she told Appellant the location of the gun.

That said, we cannot find that the trial court relied materially on its mistaken assertion that Herring presented testimony or that the assertion

was essential in order to find that Appellant's convictions were not against the weight of the evidence. Instead, the following facts provide a reasonable basis for the trial court to reject Appellant's weight claim: 1) Herring never removed the firearm from the shoebox in her closet; 2) Appellant had been in the room where the firearm was located (and, by implication, had access to it); 3) the firearm was recovered hidden in a pile of clothing; 4) the only other individuals in the apartment were one and two years old; and 5) Appellant volunteered information about its condition to police. These facts were reasonably credited by the trial court based on testimony presented at trial. Thus, we find that the trial court did not abuse its discretion in finding that the convictions did not shock its sense of justice. *See Commonwealth v. Hankerson*, 118 A.3d 415, 420 (Pa.Super. 2015).

We need not quarrel with Appellant's assertion that either the trial court's interpretation of his erroneous statement regarding the firearm's operability or the Commonwealth's failure to provide evidence of Appellant's residence or DNA on the firearm entitles him to a new trial. We will not reweigh the evidence, nor will we afford Appellant an inference to which he is not entitled.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/22/2016