J-S36022-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JARED WILLIAM SPAHR | : | |
| | : | |
| Appellant | : | No. 462 MDA 2024 |

Appeal from the Judgment of Sentence Entered March 18, 2024
In the Court of Common Pleas of Adams County Criminal Division at
No(s):  CP-01-CR-0000760-2023

BEFORE:  LAZARUS, P.J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED: DECEMBER 30, 2024**

Jared William Spahr appeals from the judgment of sentence entered following his convictions for resisting arrest, driving under the influence of alcohol or controlled substance-general impairment ("DUI"), and driving on roadways laned for traffic.[1] He challenges the sufficiency of the evidence. We affirm.

The trial court aptly summarized the facts presented at the non-jury trial:

> On April 6, 2023, Troopers Logan Howell ("Trooper Howell") and Parker Hoyt ("Trooper Hoyt") of the Pennsylvania State Police, Gettysburg Barracks, had been on duty in a marked patrol vehicle, equipped with a Motor Vehicle Recorder (MVR) device. At 11:50 p.m. on that date, they encountered a Ford pickup truck traveling west on East Berlin Road in Adams County, Pennsylvania. Trooper Howell testified that he observed that pickup truck cross the double

---

[1] 18 Pa.C.S.A. § 5104 and 75 Pa.C.S.A. §§ 3802(a)(1), 3309(1), respectively.

yellow line while driving behind that vehicle, and decided to continue trailing the vehicle. While following the truck Trooper Howell observed the driver of the Ford pickup truck commit numerous other traffic violations. Trooper Howell then initiated a traffic stop on Markle Run Road, activating the vehicle's lights and sirens. [Spahr], who was identified as the operator of the Ford pickup truck, did not pull over and, instead, turned onto a dirt lane and continued to ignore the police. [Spahr] did not stop the vehicle for almost a mile, when he was at the end of the gravel road in front of his residence, at which point he jumped out of the truck and attempted to maneuver around the vehicle away from the Troopers.

Once out of the vehicle, [Spahr] attempted to run around the vehicle to avoid the Troopers and, after failing to listen to the Troopers' commands to stop and get on the ground, was taken to the ground by force. Trooper Howell testified that, after having this initial close interaction with [Spahr], he noticed a strong odor of alcohol on [Spahr], as well as slurred speech and [Spahr's] difficulty maintaining his balance and standing upright on his own. Trooper Howell also testified that [Spahr's] eyes appeared bloodshot and glassy, and that he noticed [Spahr] had taken a drink Koozie with him when he got out of the truck. Based on these signs of impairment, coupled with [Spahr's] driving, Trooper Howell determined that based on his training and experience, [Spahr] was clearly under the influence of alcohol and incapable of safe driving.

[Spahr] was brought to the front of the patrol vehicle so the Troopers could conduct a standard DUI investigation. [Spahr] was unable to follow instructions to complete a breathalyzer test and, given the unevenness and rocky surface of the gravel road, Trooper Howell decided against conducting field sobriety tests that would require [Spahr] to balance, like the one-leg-stand and walk-and-turn tests, as he "didn't think [the road surface] was conducive to conducting those tests." After being instructed to sit on the front of the patrol vehicle to wait for the Troopers, [Spahr] attempted to walk away from the Troopers several times, at which point the Troopers began attempting to arrest [Spahr]. The MVR footage played at trial clearly depicted the same behavior and sequence of events as the Troopers described them.

On the MVR, the Troopers can also be heard warning [Spahr] that he would be tased if he did not comply with their instructions and allow them to arrest him. The MVR footage showed and Trooper Howell testified that [Spahr] continued to try to escape and resist [by] putting hands behind his back, falling to the ground and then attempting to crawl or run away from the police in that manner for an extended period of time. [Spahr] eventually was able to run and crawl some distance (roughly thirty to forty yards) into a field, where he continued to hide his arms in a "turtled" position with his arms tucked under his body in between attempts to break away and run from the police, making it exceedingly difficult for the Troopers to gain control of the situation and effectuate an arrest. It took the Troopers an additional "several minutes" to place [Spahr] under arrest, which is significantly longer than usual according to Trooper Howell, based on his experience.

Trooper Howell also explained that he and Trooper Hoyt had "drive stunned,"[2] without fully tasing [Spahr] in an effort to make the arrest easier, multiple times during the course of their struggle with him. Trooper Hoyt testified to having used the same "drive stun" technique during the interaction as well, as a result of [Spahr's] resistant and unpredictable behavior during the course of the interaction. Trooper Howell reiterated that such tactics are not typical of a DUI arrest, and use of "drive stunning" is more typical of situations requiring substantial use of force due to threats to the Troopers' safety.

Trooper Hoyt gave brief testimony regarding his observations of [Spahr's] level of intoxication during the interaction, [Spahr's] behavior during the attempted arrest, and his recollection of the use of force and "drive stunning" to gain control of the situation. Trooper Hoyt noted that [Spahr] "reeked of booze," had bloodshot and glassy eyes, and had significant difficulty balancing and standing or sitting upright at the front of the Troopers' patrol vehicle. Additionally, Trooper Hoyt was assisting Trooper Howell in the arrest and offered testimony similar to Trooper Howell's

_____

[2] A drive stun occurs when the officer "put[s] the Taser-to-skin contact [sic] with the Taser and push[es] a button that charges an electrical current for pain compliance." N.T., Trial, 1/4/24, at 14.

regarding the significant use of force necessary to finally place [Spahr] under arrest.

Trial Court Opinion, filed 4/25/24, at 1-4 (footnotes omitted). The court found Spahr guilty of DUI, resisting arrest, and driving on roadways laned for traffic. The court sentenced Spahr to six months reporting probation with 10 days restrictive conditions for DUI, a concurrent term of 24 months reporting probation for resisting arrest, and a $25 fine for driving on roadways laned for traffic. *See* Order of Court, filed 3/19/24. This timely appeal followed.

Spahr raises the following issues:

I.      Whether the evidence was insufficient to support the trial court's verdict of guilty of driving under the influence, 75 PA.C.S.A. Section 3802(A)(1), in that the Commonwealth did not prove beyond a re[a]sonable doubt that [Spahr] was incapable of safe driving.

II.     Whether the evidence was insufficient to support the trial court's verdict [on] resisting arrest, 18 PA.C.S.A. Section 5104, in that the Commonwealth did not prove beyond a reasonable doubt that [Spahr] created a substantial risk of bodily injury to the officers, and that the officers needed to use substantial force to overcome [Spahr's] resistance.

III.    Whether the evidence was insufficient to support the [trial] court's verdict of guilty as to disregarding traffic lanes, 75 PA.C.S.A. Section 3309, in that i[t] was not proven beyond a reasonable doubt that [Spahr] traveled outside of his lane of travel unless and until any such movement could be done safely.

Spahr's Br. at 4 (unnecessary capitalization omitted).

Each of Spahr's claims challenges the sufficiency of the evidence, which is "a question of law, for which our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Packer*, 168 A.3d 161, 166

(Pa. 2017) (italics added). We view the evidence in the light most favorable to the verdict winner and give the Commonwealth "the benefit of all reasonable inferences to be drawn from the evidence." ***Commonwealth v. Franklin***, 69 A.3d 719, 722 (Pa.Super. 2013) (citation omitted). Evidence is sufficient where "it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." ***Id.*** (citation omitted).

The Commonwealth may sustain its burden by wholly circumstantial evidence. ***See id.*** The fact finder may resolve any doubt about a defendant's guilt "unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." ***Id.*** (citation omitted). Furthermore, this Court "may not substitute [its] judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld." ***Id.*** (quoting ***Commonwealth v. Pettyjohn***, 64 A.3d 1072, 1075 (Pa.Super. 2013)).

First, Spahr challenges the sufficiency of the evidence for his DUI conviction. Although he concedes that he drove a vehicle, he argues that "his ability to drive safely as exhibited in the MVR was that [he] was capable of safe driving." Spahr's Br. at 11. Spahr contends that his "interpretation of the MVR is that he did not cross the center line and/or fog line on numerous occasions." ***Id***. He also claims that the MVR "clearly shows [Spahr] was not

- 5 -

intoxicated" to the point of not being able to safely operate his vehicle. *Id.* at 12. Spahr claims that his glassy eyes could have been "the result of the hour of the day, that is 11:50 p.m." and there was no evidence that his speech "was any different than his normal speech pattern." *Id.* He further notes that his demeanor with the officers did not change until "after he started [to] experience pain from the continual application of the drive stuns." *Id.*

The DUI-general impairment statute provides that "[a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle." 75 Pa.C.S.A. § 3802(a)(1). Thus, the Commonwealth had to prove that Spahr (1) drove, operated, or was in physical control of the movement of a vehicle (2) after imbibing a sufficient amount of alcohol such that he was incapable of safely driving, operating, or being in actual physical control of the vehicle's movement. *See Commonwealth v. Clemens*, 242 A.3d 659, 665 (Pa.Super. 2020).

The trial court concluded that the Commonwealth presented sufficient evidence. Concerning the element at issue here, the court found the troopers' testimony credible and relied on its observation of the MVR. It noted that the troopers testified that Spahr had an odor of an alcoholic beverage and Trooper Hoyt testified that Spahr had slurred speech, glassy and bloodshot eyes, and had trouble standing without leaning on his car. The court further noted that the MVR "showed [Spahr] having difficulty standing upright by himself and

captured [Spahr] slurring his speech while talking to the Troopers." Trial Ct. Op. at 8 (footnote omitted).

We are unable to review Spahr's arguments relying on the content of the MVR because it is not in the certified record. It is the appellant's responsibility to ensure that all record materials necessary for this Court to review an issue are in the certified record. Spahr's arguments that rely on the content of the MVR are waived. *See Commonwealth v. Saranchak*, 675 A.2d 268, 275 (Pa. 1996).

Moreover, in contravention of our standard of review, Spahr relies on his interpretation of the MVR. However, on appellate review, we view the evidence in the light most favorable to the Commonwealth and make all reasonable inferences in its favor. *Franklin*, 69 A.3d at 722. This standard renders Spahr's arguments "interpreting" the evidence in the light most favorable to him meritless. Furthermore, the troopers' testimony – which the trial court credited, and which we take as true for purposes of this appeal, pursuant to our standard of review – supports the verdict. In addition to their testimony about visible signs of Spahr's intoxication, cited by the trial court, the troopers also stated that they observed Spahr fail to maintain a single lane "while negotiating a right-hand curve in that roadway." N.T., Trial, at 6. Spahr's first issue does not warrant relief.

Next, Spahr claims that there was insufficient evidence for his conviction for resisting arrest. He argues that the Commonwealth failed to show that he subjected the officers to a substantial risk of bodily injury. He also challenges

the sufficiency of the evidence to prove that the troopers needed to use substantial force to overcome the resistance. Spahr alleges that he "merely stiffened his arms and would not fully put his arms behind his back." Spahr's Br. at 14. He notes that the trooper's action of drive stunning him multiple times after this stiffening was "unjustified and excessive[.]" *Id.* He further claims that he was trying to "avoid the continuous drive stunning" when he is seen on the MVR crawling away from officers. *Id.* at 13.

A defendant is guilty of resisting arrest if "with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, [the defendant] creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance." 18 Pa.C.S.A. § 5104. "Section 5104 criminalizes two types of conduct intended to prevent a lawful arrest: the creation of a substantial risk of bodily injury to the officer or anyone else or means justifying or requiring a substantial force to overcome." *Clemens*, 242 A.3d at 666 (citation omitted).

Here, when the troopers attempted to arrest Spahr for DUI, he "stiffened his arms" and refused to comply with their orders "to put his arms behind his back to effect the arrest." N.T., Trial, at 11. Trooper Howell testified that Spahr "continued to do that over and over making it difficult to handcuff him" and "get his arms behind his back." *Id.* at 13. As a result, the troopers employed substantial force by using a "drive stun" multiple times to overcome Spahr's resistance. *Id.* at 14. This evidence sufficiently established that Spahr's

actions "employ[ed] means justifying or requiring substantial force to overcome[.]" **Clemens**, 242 A.3d at 666 (quoting 18 Pa.C.S.A. § 5104).

For his final claim, Spahr argues that the evidence was insufficient to support his conviction for driving on roadways laned for traffic. Similar to his argument for his DUI conviction, Spahr alleges that the MVR does not show that he crossed the center line or fog line numerous times. He also claims that the MVR does not show that there was a violation of Section 3309(1) because the movement in his vehicle "was done so safely with no danger to [Spahr] or others." Spahr's Br. at 15-16.

Section 3309 of the Vehicle Code states that "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety." 75 Pa.C.S.A. § 3309(1).

As above, this issue is waived due to the absence of the MVR. **See Saranchak**, 675 A.2d at 275. Moreover, Trooper Howell testified that he observed Spahr's vehicle cross the double yellow line at least three times. **See** N.T., Trial, at 7-8. As factfinder, the trial court found this testimony credible and corroborated by the MVR. The trial court explained that the MVR footage showed "multiple instances of [Spahr] weaving back and forth on the roadway, and even captured a period of nearly ten seconds where [Spahr] was riding on the center line." Trial Ct. Op. at 12. The court further noted that Spahr did not merely "touch the fog line or center line on an empty roadway for a second or two, as captured on the MVR and as observed by Trooper Howell." **Id.**; **see**

***Commonwealth v. Best***, 120 A.3d 329, 344 (Pa.Super. 2015) (finding evidence that defendant's vehicle entered the opposite lane of travel sufficient prove driving on roadways laned for traffic); ***cf. Commonwealth v. Cephus***, 208 A.3d 1096, 1099-1100 (Pa.Super. 2019) (concluding officer had probable cause to stop defendant's vehicle for a violation of Section 3309(1) where defendant's vehicle drifted over center line at least four times). We affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/30/2024